70 F.3d 219
 69 Fair Empl.Prac.Cas. (BNA) 500,
67 Empl. Prac. Dec. P 43,827, 32 Fed.R.Serv.3d 1255
 NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE,
INC. (NAACP) and New Haven Branch, NAACP,
Plaintiffs-Appellants,
v.
TOWN OF EAST HAVEN and East Haven Board of Education,
Defendants-Appellees.
 No. 479, Docket 95-7583.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 30, 1995.
Decided Oct. 20, 1995.
 
 Joshua N. Rose, Washington, DC (David L. Rose, Rose & Rose, P.C., Washington, DC, of counsel) for Plaintiffs-Appellants.
 Suzanne L. McAlpine, New Haven, CT (Hugh F. Keefe, Lynch, Traub, Keefe & Errante, New Haven, CT, of counsel) for Defendants-Appellees.
 Before: CARDAMONE, MINER and CALABRESI, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiffs-appellants National Association for the Advancement of Colored People (NAACP) and New Haven Branch of NAACP appeal from an order entered in the United States District Court for the District of Connecticut (Dorsey, Ch. J.) denying, on the ground of public safety, a motion for a preliminary injunction brought to enjoin defendant-appellant Town of East Haven from hiring any police officers or firefighters pending a decision on the merits in the captioned action. The underlying action was commenced pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., to redress employment discrimination based on race. For the reasons that follow, we vacate the order and remand for findings of fact and conclusions of law in accordance with the provisions of Fed.R.Civ.P. 52(a).
 
 BACKGROUND
 
 2
 According to appellants, "the Town of East Haven Connecticut has never hired a black employee in its police, fire, public works or administrative functions. East Haven employs at least 199 full time permanent and 71 other employees, not one of them black." East Haven is bordered by the City of New Haven, which has a significant black population. The resident population of East Haven is 99% white, although private employers with establishments in the East Haven zip code area have a 17.7% black workforce. Appellants claim that the disparity represents a statistical variation of as much as 7.6 standard deviations. During the course of the proceedings in the district court, counsel for the Town apparently agreed with the court's statement that "there is no dispute but that whatever the relevant market is that the actual hiring, the actual employment, represents at least a 3.8 standard deviation." A standard deviation of 2 is described as indicative that the variation is due to a factor other than chance. See Waisome v. Port Auth., 948 F.2d 1370, 1376 (2d Cir.1991). Appellants' complaint refers to various statistics that are alleged to support inferences of disparate treatment and disparate impact.
 
 
 3
 The original complaint in the action was filed on May 21, 1993. On June 30, 1994, the Town moved for summary judgment on appellants' disparate impact and disparate treatment claims and on the issue of standing. By amended ruling entered on March 2, 1995, the district court denied the motion as to the disparate treatment claim and the issue of standing but granted the motion to the extent of dismissing the disparate impact claim.
 
 
 4
 Thereafter, on April 3, 1995, appellants moved for a preliminary injunction "enjoining further testing or hiring for East Haven jobs pending trial and decision in this action." The non-jury trial commenced on April 11, 1995, before any ruling was made on the preliminary injunction motion. Evidence was received over a period of seven trial days in April. During trial, appellants moved for leave to add the East Haven Board of Education as a defendant in the case. The motion was granted by order entered on May 10, 1995. On June 1, 1995, the district court granted a motion for clarification and articulation. Noting that it had previously granted a motion for summary judgment dismissing the disparate impact claim, the district court decided, because appellants had presented evidence of disparate impact at trial, "plaintiff will clarify or alter its trial preparation order to conform with proffered evidence." The court set dates for the Board of Education to respond to the complaint and for the Town to respond to the disparate impact claims. It appears that the Board of Education then will conduct discovery, and the Town will be afforded the opportunity to introduce evidence to rebut the disparate impact claims.
 
 
 5
 It was during the trial that the court turned its attention to the then-pending preliminary injunction motion and conducted a dialogue with counsel regarding the proper disposition of the motion. The result was an order dated June 8, 1995 in the following form: "Based on the record developed in open court, plaintiffs did not establish a showing that a preliminary injunction is required. Accordingly, plaintiff's motion for preliminary injunction is denied. SO ORDERED." To ascertain the basis for this ruling, reference must be made to the record of trial and to the statements made by the district court during the course of the arguments recorded in regard to the preliminary injunction issue at the trial. Commenting on the evidence that it perceived as bearing on the motion, the district court stated:
 
 
 6
 I would be very reluctant to preclude the Chief [of the East Haven Fire Department] ... from filling the nine vacancies because there's a safety problem. And while it might very well be appropriate to provide equal opportunities in the future, it would be singularly inappropriate to jeopardize the town's safety as far as either the police or fire is concerned by virtue of the unfilled vacancies.
 
 
 7
 In regard to the issue of whether the Town needed to fill the vacancies to avert a dangerous condition of understaffing, appellants argue that, because the Fire Department had been "down seven [firefighters] for over a year and the town didn't do anything very much about it," and because "[t]he Police Chief testified that he was down six [police officers] for a long period of time and the town hasn't done very much about it," there was no safety problem. The court, however, observed that "it's only logical that departmental personnel levels are a reflection ... of what somebody has determined over the years ... [that] suggests the level that needs to be for safety reasons." Continuing along the same line, the court further observed: "I assume that when the Fire Chief, for example, has got forty people plus fourteen supervisory positions, that he's got them because over the years there has evolved a determination that that's what's necessary for the safety of the town."
 
 
 8
 Appellants then requested that they be allowed to call the Fire Chief, who had just stepped down from the witness stand and was available in court. Appellants wished to have the Chief take the stand so that they could elicit testimony on the safety issue. The district court indicated that the appellants could call the Fire Chief to the stand but then told them it would be futile because, in the court's opinion, the testimony would not be helpful. The district court ended its discussion of the preliminary injunction motion with the following observation:
 
 
 9
 If the town says they need forty people, I think as quickly as possible they should get forty people. The fact that they've lived without [full staffing] for a while ... tempers the necessity to a certain degree. But on the other hand, it doesn't suggest to me that any protracted period of time is justified in fulfilling at [least] the bulk of the positions, because even ... [if] some relief were to be ordered, it might be that a new test would be ordered. Of course, then I've got to take into consideration the cost of that. But it may be that it's appropriate ... to require a greater recruiting effort and a new test and appointments made from that test. And maybe that's going to solve the problem, but on the other hand maybe not too.
 
 
 10
 It therefore can be gleaned from the record that the district court based its denial of the preliminary injunction as regards the hiring of police officers and firefighters solely upon its concern for public safety in the Town. Although appellants originally sought to enjoin all hiring in the Town by way of this motion for preliminary injunction, their appeal here is from the denial of the motion only as it pertains to police and fire personnel. While this appeal was pending, appellants made a motion in this court to enjoin any hiring by the Town pending appeal. A motions panel of this court ruled "that a limited stay is granted (as to police and fire officers only) pending hearing of the appeal without prejudice to either side requesting either continuance or a vacating of the stay at oral argument." The appeal was expedited and, at oral argument, we continued the limited stay pending our decision in this case.
 
 DISCUSSION
 
 11
 A party seeking a preliminary injunction must demonstrate "(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir.1991). "This second 'serious questions' prong is also frequently termed the 'fair ground for litigation' standard." Able v. United States, 44 F.3d 128, 130-31 (2d Cir.1995). However, the fair-ground-for-litigation prong may not be considered "where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme." Plaza Health Lab., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir.1989). The moving party in such a case must establish, to the satisfaction of the district court, both irreparable injury and a likelihood of success on the merits. Id.
 
 
 12
 It seems clear from the record before us that the Town of East Haven administers civil service examinations and hires police officers and firefighters pursuant to established municipal regulations and state civil service laws. It cannot be gainsaid that the hiring of police officers and firefighters is in the public interest. In order to prevail, therefore, appellants must establish irreparable harm and likelihood of success on the merits. The problem here is that the district court made no findings with regard to either prong of the test, nor, indeed, did it demonstrate that it applied the test at all in denying the injunction in this case.
 
 
 13
 According to Fed.R.Civ.P. 52(a), "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." A principal purpose of this provision is to allow appellate review of the district court's decision. Tekkno Lab., Inc. v. Perales, 933 F.2d 1093, 1097 (2d Cir.1991); see Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940) ("It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure."). Our normal practice is to vacate the order and remand for specific findings, "if the findings and the record are not sufficient to enable us to be sure of the basis of the decision below." Tekkno Lab., 933 F.2d at 1097; see, e.g., Weitzman v. Stein, 897 F.2d 653, 658 (2d Cir.1990).
 
 
 14
 In the case at bar, the district court made no findings of fact whatsoever. Its denial of the preliminary injunction was driven only by a concern for public safety, and no findings on even that issue were made. The court merely noted that "it's only logical that departmental personnel levels are a reflection ... of what somebody has determined over the years ... [that] suggests the level that needs to be for safety reasons." The district court uncritically accepted the Town's contention that failure to fill the vacancies then existing in the police and fire departments would jeopardize public safety in the Town. It is easy to conceive of reasons, other than safety, for maintaining more than the necessary complement of personnel. In evaluating the Town's safety needs, it might well be appropriate to compare the size of the Town's police and fire departments with those of the surrounding towns. But instead of performing any such analysis, the court stated: "I assume that when the Fire Chief, for example, has got forty people plus fourteen supervisory positions, that he's got them because over the years there has evolved a determination that that's what's necessary for the safety of the town." An assumption cannot pass for a factual finding.
 
 
 15
 In addition, the district court erred when it ruled that the recall of the Fire Chief to the witness stand to testify on the public safety issue would be futile. The district court was content to accept the Town's contention that anything less than full staffing in the police and fire departments would be hazardous to public safety. Yet, there were indications that the understaffing in the police department was met by overtime work by officers presently serving and that fire department personnel shortages were alleviated by the use of volunteers. These substitute measures may very well prove to be insufficient, as might other possible measures such as obtaining assistance from the state police or hiring employees on a non-tenured basis pending the outcome of this suit. However, insofar as the safety factor is implicated, it is for the district court to weigh the pros and cons of keeping the vacancies open pending resolution of this lawsuit. In this connection, factual findings based on proper evidence bearing on this issue are essential.
 
 
 16
 The public safety factor is, of course, only one aspect of the irreparable harm prong of the showing necessary to secure a preliminary injunction. In the final analysis, it is the appellants who must demonstrate how they would be irreparably harmed if the injunction were not granted. We consider a showing of irreparable harm to be the most important prerequisite for the issuance of a preliminary injunction. Reuters Ltd. v. United Press Int'l., Inc., 903 F.2d 904, 907 (2d Cir.1990). A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages. Id.; see also Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989).
 
 
 17
 The district court did not address the appellants' contention that the filling of vacancies in both the police and fire departments occurs so infrequently in the Town that it would be irreparably harmed if the present vacancies are filled. The Supreme Court has recognized that the denial of job opportunities and the loss of training and competitive advantages that may be gained from such opportunities can constitute "serious or irreparable harm." Carson v. American Brands, Inc., 450 U.S. 79, 89 & n. 16, 101 S.Ct. 993, 999 & n. 16, 67 L.Ed.2d 59 (1981). Moreover, should the Town fill the present openings and the appellants ultimately prevail, the granting of relief to the prevailing parties would be complicated indeed. See Firefighters Inst. for Racial Equality v. City of St. Louis, 616 F.2d 350, 362 (8th Cir.1980), cert. denied, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981). Against these contentions, the court must balance validated public safety concerns, making findings of fact and conclusions of law that are capable of appellate review.
 
 
 18
 The district court also made no findings of fact or conclusions of law with respect to appellants' likelihood of success on the merits. In its remarks from the bench, the court seemed quite ambivalent on this issue, both as to the merits of the claims and the nature of the relief to be afforded. The court first indicated that if any relief were to be granted, it would be prospective and would not in any way affect the recent examinations for the police and firefighter positions. The court later acknowledged the appellants' claim that the recent examinations were not job related and discussed the possibility of ordering new examinations:
 
 
 19
 [I]f ... some relief were to be ordered, it might be that a new test would be ordered. Of course, then I've got to take into consideration the cost of that. But it may be that it's appropriate ... to require a greater recruiting effort and a new test and appointments made from that test. And maybe that's going to solve the problem, but on the other hand maybe not too.
 
 
 20
 Obviously, the court reached no decision on likelihood of success, perhaps because the disparate impact claim was added after the trial commenced. Since a party, the Board of Education, as well as this claim, was added after trial commenced, it would appear that additional trial days may be necessary. Certainly, there has been no separate evidentiary hearing on the motion for a preliminary injunction, and the court may first wish to take additional evidence before ruling on the remand hereby ordered.
 
 
 21
 In assessing likelihood of success, the district court should bear in mind the substantive law of employment discrimination: Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., not only forbids overt and intentional discrimination; it also prohibits discrimination resulting from acts that are facially neutral but have a "disparate impact." International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Title VII permits employers to "act upon the results of any professionally developed ability test," provided that the test is not designed to discriminate on the basis of, inter alia, race, color or national origin. 42 U.S.C. Sec. 2000e-2(h).
 
 
 22
 "[A] plaintiff may establish a prima facie case of disparate impact by showing that use of the test causes the selection of applicants ... in a racial pattern that significantly differs from that of the pool of applicants." Bridgeport Guardians, Inc. v. City of Bridgeport, 933 F.2d 1140, 1146 (2d Cir.), cert. denied, 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991). Such a showing can be established through the use of statistical evidence which discloses a disparity so great that it cannot reasonably be attributed to chance. See Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 307-08, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977). To establish a prima facie case, the statistical disparity must be sufficiently substantial to raise an inference of causation. Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 994-95, 108 S.Ct. 2777, 2788-89, 101 L.Ed.2d 827 (1988). After a prima facie case is established,
 
 
 23
 the employer has the burden of coming forward with evidence to show that the test has " 'a manifest relationship to the employment in question.' " Albemarle Paper Co. v. Moody, 422 U.S. at 425, 95 S.Ct. [2362] at 2375 [45 L.Ed.2d 280 (1975) ] (quoting Griggs v. Duke Power Co., 401 U.S. at 432, 91 S.Ct. at 854 [28 L.Ed.2d 158 (1971) ]. If the employer can make such a showing, the plaintiff may nonetheless prevail if he can suggest alternative tests or selection methods that would meet the employer's legitimate needs while reducing the racially disparate impact of the employer's practices.
 
 
 24
 Bridgeport Guardians, Inc., 933 F.2d at 1147.[1]
 
 
 25
 The appellants contend that the Town's failure ever to hire a full-time black employee cannot be explained by normal variance. The appellants' evidence is of the type that the Supreme Court has labeled the "inexorable zero"--evidence that an employer in an area with a sizeable black population has never hired a single black employee--which, by itself, supports an inference of discrimination. International Bhd. of Teamsters, 431 U.S. at 342 n. 23, 97 S.Ct. at 1858 n. 23; see also EEOC v. O & G Spring and Wire Forms Specialty Co., 38 F.3d 872, 878 (7th Cir.1994) (applying Teamsters ), cert. denied, --- U.S. ----, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995). The Town, in turn, argues that it has recruited job applicants in three area newspapers and has consistently made efforts to attract minority applicants. The Town further asserts, in support of the validity of the tests, that the examination for the police officer position was independently formulated and administered by the South Central Criminal Justice Administration, a management services agency for police departments in South Central Connecticut, and that the test questions for the firefighters' examination were developed by the State of Connecticut Fire Marshal's Office. In determining whether the appellants have established a likelihood of success on the merits, the district court must weigh the Town's showing against the appellants' statistical evidence, and in doing so must also consider the fact of the "inexorable zero."
 
 CONCLUSION
 
 26
 The order of the district court is vacated, and the case is remanded for reconsideration in light of the foregoing. The district court shall formulate findings of fact and conclusions of law suitable for appellate review before issuing an order determining the motion for a preliminary injunction. The stay presently in effect shall continue until the district court issues its decision on remand.
 
 
 
 [1]
 The burden of proof in disparate impact cases is now codified at 42 U.S.C. Sec. 2000e-2(k)