**Richard J. RENALDI, Plaintiff,**

**v.**

**MANUFACTURERS & TRADERS TRUST CO., a/k/a M & T Bank, Defendant.**

**No. 94–CV–6627L.**

United States District Court,
W.D. New York.

Feb. 24, 1997.

Lonny H. Dolin, Dolin & Modica, P.C., Rochester, NY, for Richard J. Renaldi.

Anne S. Simet, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, Anthony R. Palermo, Hodgson, Russ, Andrews, Woods & Goodyear, Rochester, NY, for Manufacturers & Traders Trust Co.

*DECISION AND ORDER*

LARIMER, Chief Judge.

Plaintiff, Richard J. Renaldi, commenced this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, alleging that his former employer, defendant Manufacturers and Traders Trust Company ("M & T"), terminated his employment and otherwise discriminated against Renaldi on account of his age. Plaintiff seeks declaratory, injunctive, and equitable relief, liquidated and compensatory damages, and costs and attorney's fees. Defendant has moved for summary judgment.

## BACKGROUND

The complaint alleges that Renaldi, who was born in 1937, began working for Central Trust Company in 1963 as a bank teller, and eventually rose to the position of branch manager. On July 1, 1992, M & T acquired Central Trust.

Initially following M & T's acquisition of Central Trust, Renaldi continued to work as a branch manager at M & T's Lyell branch in Rochester. In mid-January 1993, however, Renaldi was moved from that position to a business development officer position, which required him to generate various types of business and meet goals set by his superiors. Plaintiff alleges that his branch manager po-

sition was filled by Robert Rasp, who was then thirty-eight years old.

Although Renaldi's salary and benefits as business development officer remained the same as they had been when he was branch manager, he alleges that his transfer to this position constituted an adverse job action because the business development officer position was less prestigious and carried less authority. He also alleges that M & T set his goals unreasonably high in order to create a seemingly objective reason to terminate him later. Plaintiff further alleges that his working conditions were made deliberately difficult and unpleasant; he was not given his own office, desk, chair, telephone or computer, and he was "shunned" by his manager.

On March 3, 1993, Alfred J. Pawlikowski, M & T's Vice President and Manager of Employee Relations, informed Renaldi that his employment was being terminated. The decision to terminate plaintiff had been made by Carl W. Jordan, Administrative Vice President and Regional Manager for M & T's Retail Banking Division. On March 18, 1993, Norbert H. Remus, M & T's Vice President and Manger of Employee Benefits, wrote a letter to Renaldi confirming the details of his termination, such as severance pay, availability of benefits, etc. Pawlikowski Affidavit Ex. A.

Plaintiff was not replaced in his business development officer position. Plaintiff alleges that the reason for this is that the position was a sham in the first place, created only to lay the groundwork for his termination.

On October 15, 1993, Renaldi filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued plaintiff a right-to-sue letter on October 17, 1994.

Plaintiff commenced the instant action on December 27, 1994. The complaint asserts three causes of action. Count I alleges that plaintiff's alleged demotion and termination subjected him to disparate treatment on account of his age, in violation of the ADEA. Count II alleges that M & T maintained a discriminatory policy of terminating older employees, and that this policy had a disparate impact on Renaldi, also in violation of

the ADEA. Count III asserts that M & T terminated and otherwise discriminated against plaintiff on account of his age, in violation of the New York State Human Rights Law ("HRL"), Exec. L. § 296.

## DISCUSSION

### I. Timeliness of Claims Relating to Plaintiff's Alleged Demotion

■ Defendant contends that plaintiff's claims regarding his alleged demotion from branch manager to business development officer should be dismissed as time-barred because plaintiff's EEOC complaint was not filed until more than 300 days after he was notified of his reassignment from the branch manager position on November 2, 1992. Under 29 U.S.C. § 626(d)(2), an ADEA action may not be commenced until 60 days after the filing of a charge with the EEOC, and the EEOC charge in turn must have been filed "within 300 days after the alleged unlawful practice occurred . . ." Failure to file a timely charge of age discrimination bars a subsequent action under the ADEA. *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 59 (2d Cir.1986) ("No civil action based on a claim of age discrimination may be brought in a federal court unless the plaintiff has timely filed his claim with the EEOC"). In the case at bar, Renaldi filed his administrative complaint on October 15, 1993, which, if defendant's argument is correct, would bar any claims arising after December 19, 1992.

■ Defendant's contention in this regard is flawed, for several reasons. First, defendant did not raise untimeliness as an affirmative defense in its answer. By failing to do so, defendant has waived the defense. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 751 (2d Cir.1992); *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 955 (2d Cir.1988).

■ Moreover, even if this defense had not been waived, defendant's motion for summary judgment on this ground would have to be denied. The burden of establishing an affirmative defense based on a statute of limitations is on the party asserting the defense. *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 243 (2d Cir.1984). In the

case at bar, plaintiff alleges that on November 2, 1992, he was given a performance review by Senior Vice President Stephen J. Meyer. Although defendant alleges that Renaldi was informed at that meeting that he would no longer be a branch manager, *see* Meyer Affidavit Ex. A, plaintiff alleges that Meyer simply told him that as of January 1, 1993, he would cease to be branch manager at the Lyell branch. Plaintiff claims that he was not informed what his new position would be, and that Meyer did not foreclose the possibility that he would be made manager of a different branch. Renaldi Affidavit 1 45. Plaintiff also alleges that it was not until mid-January 1993 that he realized that there was no possibility of his being reassigned to another branch manager position, and that not until February 1993, after he had been working in his new position for some time without any training or support, did he realize that he had been placed in a "sham position," and, in effect, demoted. These conflicting allegations present issues of fact that are not resolvable on a motion for summary judgment. *See Fine v. Interpublic Group of Companies, Inc.,* 94 CIV. 4419, 1994 WL 701996 *3–*4 (S.D.N.Y. Dec.14, 1994) (denying employer's motion for summary judgment because factual issues existed concerning date on which plaintiff should have been aware that he was going to be terminated rather than transferred).

## II. Disparate Treatment Claim

Defendant contends that plaintiff cannot make out a prima facie case of disparate treatment to support his claim under Count I, and that even if he can, plaintiff cannot overcome defendant's proffered legitimate reasons for his transfer and termination. This argument requires application of the familiar analysis set forth by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the

defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824).

To establish a prima facie case of individualized disparate treatment under this analysis, plaintiff must show: (1) membership in a protected class; (2) that he satisfactorily performed the duties required by his position; and (3) that he was subjected to some adverse job action; (4) under circumstances.giving rise to an inference of discrimination. *See Viola v. Philips Medical Systems of North America,* 42 F.3d 712, 716 (2d Cir.1994); *Woroski v. Nashua Corp.,* 31 F.3d 105, 109 (2d Cir.1994). The plaintiffs burden to establish a prima facie case is de minimis. *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29,37 (2d Cir.1994).

Defendant contends that with respect to his alleged demotion, Renaldi cannot show that his reassignment was in fact a demotion or in any way adverse. With regard to his termination, M & T contends that Renaldi cannot show that he was replaced by a younger person, or any other circumstances suggestive of discrimination. M & T also contends that Renaldi cannot show that he was performing satisfactorily in either the branch manager or business development officer positions.

I find that plaintiff has made out a prima facie case of age discrimination. Plaintiff alleges that he was fully qualified to be a branch manager, and that he performed satisfactorily in that position at all times. The fact that he had held that position for eleven years, and that he had received favorable performance reviews prior to November 1992, is sufficient to give rise to an issue of fact in that regard. *See Padilla v. Metro–North Commuter R.R.,* 92 F.3d 117, 123 (2d Cir.1996) (fact that plaintiff had previously

received favorable performance reviews supported jury's finding that his demotion was for purposes of retaliation). In addition, defendant's contention that Renaldi did not meet M & T's expectations as a business development officer misses the point, since plaintiff alleges that M & T never intended him to succeed in that position, and that the whole purpose of his reassignment was to lay the groundwork for his termination. *See, e.g., Shager v. Upjohn Co.,* 913 F.2d 398, 405 (7th Cir.1990) (reversing summary judgment in ADEA case, in part based on evidence that employer had deliberately assigned plaintiff, a sales representative, unpromising territory); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 799 (3d Cir.1990) (race discrimination action could survive summary judgment where plaintiff alleged that he was purposely assigned first to unusually tough supervisor, and then to supervisor who lacked experience as trainer, thereby raising inference that defendant never expected plaintiff to succeed); *Bonura v. Chase Manhattan Bank, N.A.,* 795 F.2d 276, 277 (2d Cir.1986) (affirming jury verdict for ADEA plaintiffs based in part on evidence that supervisor had established unrealistic performance goals in order to justify replacing plaintiffs with younger employees).

■ I also find that questions of fact exist regarding the adverse nature of plaintiff's reassignment. While I recognize that a transfer or reassignment involving no loss of pay and only minor changes in working conditions will generally not constitute an adverse job action, *see Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996), the mere fact that Renaldi's salary and benefits did not change after his reassignment does not in itself preclude a finding that he was demoted. *See de la Cruz v. New York City Human Resources Admin. Dep't of Social Services,* 82 F.3d 16, 21 (2d Cir. 1996) (although plaintiff's claim that transfer to different unit, with no cut in pay, was adverse action because new unit was less prestigious was "quite thin," transfer "arguably altered the terms and conditions of his employment in a negative way," and hence satisfied third prong of *McDonnell Douglas* prima facie test), *petition for cert. filed,* (U.S. July 10, 1996) (No. 96–5214); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 456–57 (7th Cir.

1994) ("an employer does not insulate itself from liability for discrimination simply by offering a transfer at the same salary and benefits"); *Collins v. Illinois,* 830 F.2d 692, 703–04 (7th Cir.1987) (transfer without loss of pay constituted adverse action, since plaintiffs new duties consisted of less important work and she no longer had her own office, telephone, and business cards). Plaintiff contends that his change from branch manager to business development officer resulted in a loss of supervisory authority, and that he was not given an office, desk, chair, computer, or telephone. Renaldi Affidavit ¶ 50. Drawing all inferences in favor of plaintiff, I find these allegations sufficient to establish a prima facie case.

■ M & T's stated reason for transferring plaintiff is that for business reasons it needed to reduce the number of its branches, and therefore the number of branch managers as well. M & T claims that Renaldi was one of the managers chosen for reassignment because he was not among the better qualified employees. M & T also asserts that it terminated plaintiff because he was not performing his duties as business development officer satisfactorily.

For many of the same reasons stated with respect to plaintiff's prima facie case, I find that issues of fact exist regarding whether M & T's proffered reasons are a pretext for discrimination. As noted, plaintiff's branch manager position was filled by a younger person outside the protected class. While that fact alone could not overcome defendant's proffered legitimate reason for transferring plaintiff, Renaldi's years of serving as branch manager, apparently satisfactorily for most of that time, gives rise to an issue of fact about whether he was truly selected for reassignment because he was among the less-qualified branch managers. *Padilla,* 92 F.3d at 123; *see also Binder v. Long Island Lighting Co.,* 57 F.3d 193, 200 (2d Cir.1995) (trier of fact may generally infer discrimination when it finds employer's explanation unworthy of credence). In addition, though M & T contends that Renaldi did not perform satisfactorily as business development officer, an issue of fact is created by plaintiff's alle-

gations that that is precisely what M & T intended, and that therefore he was not given adequate training, support, or equipment to succeed in that position. *Shager,* 913 F.2d at 405; *Weldon,* 896 F.2d at 799; *Bonura,* 795 F.2d at 277. Likewise, the fact that Renaldi was not replaced after his termination, while arguably indicative of a lack of discriminatory intent, could also be seen as supporting plaintiff's allegation that his business development officer position was a sham created solely to provide M & T with an excuse to fire him. *See Woroski,* 31 F.3d at 108 ("A plaintiff is not required to show that he was replaced by a younger, newly-hired employee"). Again, when all inferences are drawn in plaintiff's favor, it is clear that factual issues exist that preclude summary judgment.

### III. Disparate Impact Claim

Count II of the complaint alleges that M & T "maintained a discriminatory policy and/or practice of demoting and/or terminating older individuals within the protected class among branch level managers to achieve an overall younger management force," and that this policy "had a disparate impact on RENALDI as a member of the protected class governed by the ADEA." Complaint ¶¶ 36, 37. Defendant contends that plaintiff cannot establish this claim because he has not identified any facially neutral test or employment practice that had a disparate impact on workers within the protected class, and because plaintiff's statistical analysis is so flawed as to be worthless.

■ A disparate-impact claim is one that alleges a facially neutral policy or test that affects one class of employees more harshly than another and cannot be justified by business necessity. *Maresco v. Evans Chemetics,* 964 F.2d 106, 115 (2d Cir.1992). Proof of discriminatory intent is unnecessary. *See Diehl v. Xerox Corp.,* 933 F.Supp. 1157, 1164 (W.D.N.Y.1996).[1]

■ "In order to establish a prima facie case of age discrimination by showing disparate impact, [plaintiff] must first identify a specific employment practice having an adverse impact upon members of the protected class, i.e., 'that the practice excluded him or her, as a member of a protected group, from a job or promotion opportunity.'" *Maresco,* 964 F.2d at 115 (quoting *Waisome v. Port Auth. of New York and New Jersey,* 948 F.2d 1370, 1375 (2d Cir.1991)) (citations omitted). Statistical evidence may be used to establish a disparate-impact claim, provided that it "reveals a disparity so great that it cannot be accounted for by chance ..." *Waisome,* 948 F.2d at 1375. In other words, "the statistical disparity must be sufficiently substantial to raise an inference of causation." *NAACP v. Town of East Haven,* 70 F.3d 219, 225 (2d Cir.1995).

■ If the plaintiff establishes a prima facie case, the employer then "has the burden of coming forward with evidence to show that the [facially neutral] test has 'a manifest relationship to the employment in question.'" *Id.* (quoting *Bridgeport Guardians, Inc. v. City of Bridgeport,* 933 F.2d 1140, 1147 (2d Cir.), *cert. denied,* 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991)). If the employer makes such a showing, "the plaintiff may nonetheless prevail if he can suggest alternative tests or selection methods that would meet the employer's legitimate needs while reducing the ... disparate impact of the employer's practices." *Bridgeport Guardians,* 933 F.2d at 1147.

■ In the case at bar, plaintiff contends that the employment practice being challenged is M & T's "subjective performance appraisal process and M & T's desire to focus on new business," i.e., on hiring and retaining branch managers who could concentrate on developing new business. Plaintiff's Memorandum of Law at 24. In particular, plaintiff identifies "the November, 1992 reviews given to all branch managers" as the alleged dis-

---

1. Although the Second Circuit has upheld the application of disparate-impact analysis in ADEA cases, *see Maresco,* 964 F.2d at 115 M & T asserts that the Supreme Court's decision in *Hazen Paper v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), casts that holding into doubt. *Hazen Paper* did not definitively overrule *Maresco,* however, and until the Second Circuit pronounces otherwise, disparate impact claims may be asserted under the ADEA in this circuit. *See Diehl,* 933 F.Supp. at 1165–66; *Krueger v. New York Telephone Co.,* 1993 WL 276058 (S.D.N.Y.1993).

criminatory employment practice. See Plaintiff's Memorandum of Law at 25.

Based on plaintiff's allegations, however, I find that he has not met his burden of establishing a prima facie case under a disparate-impact theory. The whole thrust of plaintiff's allegations is that M & T set out on a deliberate course of conduct specifically aimed at his termination, not that M & T applied a facially neutral policy that adversely affected older employees in general. The complaint itself shows this, since it alleges that M & T "maintained a discriminatory policy and/or practice of demoting and/or terminating older individuals ..." In other words, M & T did not maintain an apparently legitimate policy that had the *effect* of terminating older employees; terminating and demoting older employees was the policy.

This court recently granted summary judgment for an employer on a similar claim in another case, *Hunt v. Tektronix, Inc.,* 952 F.Supp. 998 (Decision and Order 1997). In *Hunt,* as here, the plaintiff attempted to assert both a disparate-treatment claim and a disparate-impact claim on essentially the same factual allegations, which were that the defendant employer pursued an intentionally discriminatory policy. The reasoning of my decision in *Hunt* is filly applicable to the case at bar, and I will not repeat it in full here. Several aspects of the instant case, however, bear mention.

Though I recognize that a plaintiff may proceed under alternative theories of liability, there still must be factual allegations to support both theories for both claims to survive a motion for summary judgment. The allegations in the case at bar, however, support only a claim of disparate treatment. None of plaintiff's factual allegations support his assertion that the November 1992 performance reviews were facially neutral. Plaintiff alleges that the review he was given in November 1992 was simply false. He claims that, in sudden and sharp contrast to the favorable reviews he had received prior to that time, Meyer falsely claimed that Renaldi's performance had been unsatisfactory, simply to provide an excuse to remove him as branch manager. That is not the application of a facially neutral policy, but intentional discrimination.

I also note that plaintiff states in his memorandum of law that M & T's use of "guidelines requiring an evaluation of the branch Managers on the basis of M & T's performance criteria" had a disparate impact on older workers, yet in the same sentence plaintiff asserts that M & T "in fact, chose different and subjective criterion [sic] than required by the guidelines to make its decisions on who would remain as branch managers." Plaintiffs Memorandum of Law at 24. It is clear, then, that plaintiff is not alleging that application of a facially neutral policy had a disparate impact, but that M & T deliberately singled out older employees for termination or transfer. That does not state a disparate-impact claim. *See Maresco,* 964 F.2d at 115 (dismissing a disparate-impact claim where the plaintiff's "facially neutral employment practice ... coalesces with the discharge which he claims to have constituted disparate treatment"); *see also Verney v. Dodaro,* 872 F.Supp. 188, 193 (M.D.Pa.1995) (describing as "nonsensical" plaintiffs contention that her employer's alleged policy of intentionally discriminating against women caused a disparate impact on women), *aff'd,* 79 F.3d 1140 (3d Cir.1996).

Plaintiff also alleges that M & T's focusing on branch managers' ability to generate new business as one of the chief criteria for deciding which managers to retain had a disparate impact on older managers. While the use of that criterion could be considered a facially neutral employment policy, however, plaintiff has shown no evidence of how that alleged policy had a disparate impact on older managers. The only evidence that plaintiff has presented in this regard is that his own performance appraisal in November 1992 was critical of Renaldi's failure to develop business at the Lyell branch (a criticism that plaintiff contends is false because the real reason for the Lyell branch's poor performance was its location in an economically depressed, high-crime neighborhood). Plaintiff has not provided any evidence that M & T's stress on business development had an adverse impact on older employees as a group. In short, plaintiff simply has not

made out a prima facie case of disparate impact.

## CONCLUSION

Defendant's motion for summary judgment (Item 14) is granted in part and denied in part. Defendant's motion to dismiss Count II of the complaint is granted. In all other respects, defendant's motion is denied.

IT IS SO ORDERED.