**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, and New Haven Branch of the NAACP, Plaintiffs–Appellants,**

v.

**TOWN OF EAST HAVEN, and East Haven Board of Education, Defendants–Appellees.**

No. 99–7525.

United States Court of Appeals, Second Circuit.

Argued Feb. 22, 2001.

Decided Aug. 01, 2001.

Eric P. Smith, Lynch, Traub, Keefe & Errante, P.C. (Hugh F. Keefe, of counsel), New Haven, CT, for Defendants–Appellees.

David N. Rosen, Rosen & Dolan, PC (David L. Rose & Joshua N. Rose, Rose & Rose, of counsel), New Haven, CT, for Plaintiffs–Appellants.

Before MESKILL, PARKER, and SACK, Circuit Judges.

SACK, Circuit Judge:

Plaintiffs National Association for the Advancement of Colored People and the New Haven Branch of the NAACP (collectively, the "NAACP") appeal from a Supplemental Judgment on Attorney's Fees entered on March 23, 1999 by the United States District Court for the District of Connecticut (Peter C. Dorsey, *Judge*). On post-judgment motions, the district court ruled that the NAACP was entitled to attorney's fees [1] as the prevailing party in its suit against the Town of East Haven and the East Haven Board of Education pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The court restricted the award, however, to reimbursement of fees for work performed prior to the NAACP's receipt of a pre-suit letter from counsel for the Town in the course of correspondence about possible settlement terms. *See NAACP v. Town of East Haven,* 44 F.Supp.2d 422 (D.Conn.1999) (*"NAACP II "*).[2] In the

---

1. Although the fees sought in this case are for multiple attorneys, we refer to them in the singular possessive, "attorney's fees," because that is the term used by Title VII in providing for such awards.

2. There have been several opinions rendered during the course of this litigation, including one in this Court relating to a motion for a preliminary injunction restricting Town hiring of police officers and firefighters. *See NAACP v. Town of East Haven,* 70 F.3d 219 (2d Cir.1995). Only two are relevant to this appeal: the district court's 1998 opinion on the merits, and its opinion of the same year on attorney's fees, from which this appeal is taken. We therefore define these two opinions in the text of this opinion as *"NAACP I"* and *"NAACP II,"* respectively.

view of the district court, the letter as amplified by the testimony of the Town's lawyer indicated that the NAACP could have achieved its objectives through settlement without filing suit. The court therefore held that the NAACP should not recover fees and costs incurred in litigation initiated after the letter was received. *See id.* at 428–31. We conclude that this decision constituted an abuse of the district court's discretion. We therefore vacate the district court's supplemental judgment and remand for an award of costs and attorney's fees consistent with this opinion.

## BACKGROUND

The NAACP's "Suburban Litigation Program" seeks to address perceived pockets of employment discrimination arising largely from municipal hiring preferences given to residents of primarily white towns that have a large minority workforce available nearby.[3] In 1988, the NAACP began to consider East Haven, among other Connecticut towns, for inclusion in the program. The Town did not have a formal resident hiring preference. As the district court later found, though,

> [t]he Town [then] employ[ed] 200 full time, 26 part-time and 83 seasonal persons. On the last roster, 25% were residents of towns other than East Haven, and 75% were Town residents.... According to its Equal Employment Opportunity reports from 1983 through 1996, the Town employed no blacks. The first black was hired [after the lawsuit was begun] in February 1997, as Welfare Director.

*NAACP v. Town of East Haven,* 998 F.Supp. 176, 178 (D.Conn.1998) ("*NAACP*

*I* "). By contrast, blacks composed 17.7% of the work force of private employers that reported relevant statistics to the EEOC and that were located in the two zip code areas in which East Haven is situated. *See id.* at 179.

The NAACP sought to remedy the stark under-representation of blacks in the municipal workforce through a consent decree providing for an aggressive recruitment program that would include radio advertising targeted at a black audience in neighboring communities. The Town opposed such a decree on the grounds that it had no resident hiring preference and that it already had a program in place to recruit employees from outside East Haven.

In 1990, contemplating a Title VII suit against East Haven, the NAACP sought and received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").[4] The letter expired, however, without the NAACP instituting litigation against the Town.

In October and November 1992, Stephanie Rones, an assistant general counsel of the NAACP, sought without success to open settlement negotiations with East Haven through its outside counsel, Michael A. Albis. On February 23, 1993, therefore, the NAACP obtained a second right-to-sue letter from the EEOC with respect to its claims. Nine days later, on March 4, Rones again contacted Albis in order to explore the possibility of a settlement.

On April 19, Albis responded by writing that he had discussed the matter further with Town officials. He stated that the Town "intend[ed] to continue the recruitment practices which it ha[d] developed

---

3. As of November 2000, according to the NAACP, the program had resulted in negotiated consent decrees in eighteen cases, and the NAACP had prevailed in litigation in four others.

4. A right-to-sue letter is a prerequisite to bringing a Title VII suit. *See* 42 U.S.C. § 2000e–5(f); *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir.2000).

over recent years to attempt to attract qualified applicants, including minority applicants, from outside the geographical boundaries of the town." He insisted, however, that because the Town had no hiring policy that was preferential toward Town residents, a consent order like those entered into between the NAACP and other municipalities was neither "necessary [n]or appropriate." He indicated his interest, however, in continuing to explore the possibility of settlement.

Rones answered Albis by letter dated May 4, 1993. She wrote that a lawsuit and a consent decree could be avoided if the Town agreed to several conditions, including an "expansive" recruitment effort with radio advertising, and reimbursement of the NAACP's costs and attorney's fees.

Albis responded by letter of May 7. The complete text of the letter reads:

Dear Attorney Rones:

Thank you for your letter of May 4, 1993. I have forwarded your proposal to the appropriate officials of the Town of East Haven for their review, and I will advise you of their response.

However, apart from any other issues, I must state at this time that I do not see any basis for the Town agreeing to pay any expenses such as attorneys fees at this time. Our consistent position has been that the Town is not engaging in any discriminatory preference in favor of local residents, and we have produced documentary evidence in support of that position. In short, the Town does not feel that you would have prevailed in your claim of descrimination [sic] had suit been filed, and therefore I do not expect the Town to be willing to pay for any expenses which the NAACP may have incurred for such a suit.

In any event, I will advise as to the Town's position on the remaining points once they have had the opportunity to review your proposal with local officials. Thank you for your courtesy in this matter.

Yours truly,

Michael A. Albis

Rones did not receive the letter, apparently because she was working away from her office at the time. Unaware of its existence, she sent Albis another letter on May 12, 1993, warning that if the Town did not respond to her May 4 offer, the NAACP would file suit on May 21. Albis answered by faxing a second copy of his May 7 letter to Rones. Albis testified during the attorney's fees phase of the litigation that he informed Rones during this time period that "[t]he ... things [demanded by the NAACP other than the payment of attorney's fees] were all items that the Town had been doing all along and that [he] had agreed in previous conversations [he] did not think would be a problem."

On May 21, having received no further reply from the Town and with two business days remaining before the expiration of its right-to-sue letter, the NAACP filed suit under Title VII on disparate treatment and disparate impact theories. The complaint sought an injunction requiring non-discriminatory employment practices, a vigorous recruitment program designed to attract black applicants in numbers that more closely reflect the proportion of blacks in the relevant labor market, and measures to remedy the present effects of past discrimination. No further effort to settle the dispute was made by either side.

The ensuing litigation lasted more than five years. Although the NAACP was unable to prove the discriminatory intent on the part of the defendants necessary for it to sustain its disparate treatment claim, it prevailed at a bench trial on its disparate impact claim. *See NAACP I*, 998 F.Supp.

at 186–88. The district court's post-trial decree requires the Town and the Board of Education, *inter alia,* to increase awareness of job opportunities through advertising directed to the black community and communications with black community organizations; to implement a formal system for monitoring, enforcing, and keeping records of hiring and recruitment efforts; to develop employment tests that comply with Title VII and the Uniform Guidelines for Employee Selection Procedures, 29 C.F.R. § 1607.4; to consult with independent testing agencies in selecting and administering such tests; and to refrain from using hiring preferences arising from residence, political affiliation, or collective bargaining provisions.

The NAACP then sought $445,215 in attorneys' fees and another $55,435 in litigation costs in connection with the completed proceedings. *See NAACP II,* 44 F.Supp.2d at 431. The defendants cross-claimed for approximately $250,000 in such fees and costs, claiming that they rather than the NAACP had prevailed. The district court ruled that the NAACP was a prevailing party entitled to attorney's fees and that neither of the defendants was. But the court excluded all claimed fees and costs incurred by the NAACP after May 1993 on the grounds that the Town had acquiesced in the NAACP's substantive demands at that time and that the NAACP could therefore have achieved its legitimate substantive goals through settlement and without litigation. The court therefore awarded the NAACP $10,333 in fees and $33.20 in costs accrued through May 1993 and in connection with the post-trial fee application itself. *See id.* at 431–32.

5. Because the same standards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), we rely on precedents involving attor-

On appeal, the NAACP challenges the amount of the award.

## DISCUSSION

 Title VII provides that "the court, in its discretion, may allow the prevailing party [in litigation under Title VII] . . . a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e–5(k).[5] We review a district court's award of attorney's fees for abuse of discretion. *See LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 757 (2d Cir.1998). Despite this highly deferential standard of review, "[a] district court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the record." *Id.*

 " '[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The district court concluded that the NAACP was a prevailing party and that it had "achieved more than nominal success," thus making it eligible for attorney's fees. *NAACP II,* 44 F.Supp.2d at 428. With respect to the amount of the fee award, the district court noted that " '[w]here a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee.' If a plaintiff obtains 'limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.'" *Id.* at 428 (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933) (citations omitted).

ney's fees without regard to whether they involved Title VII or some other federal statute. *See also Bridges v. Eastman Kodak Co.,* 102 F.3d 56, 58 n. 1 (2d Cir.1996) (cases under 42 U.S.C. § 1988 are authoritative in Title VII attorney's fees context).

The district court found that the "NAACP could have achieved its objectives via settlement, with the possible exception of recovery of fees and costs." *Id.* at 431. It therefore concluded that the results achieved by the NAACP were not "excellent." *Id.* at 428. In calculating a "reasonable" fee in light of what the court saw as the NAACP's "limited success," the district court restricted the award of attorney's fees to work performed by NAACP lawyers prior to the date in May 1993 when, in the court's view, the matter should have been settled. *See id.* at 431–32. We conclude that the district court's decision was an abuse of discretion because it was premised on a clearly erroneous assessment of the record, or because it was inconsistent with our decision in *Ortiz v. Regan*, 980 F.2d 138 (2d Cir.1992), or both.

■ The district court's denial of fees in and after May 1993 was based in part on its findings that "in May, 1993, ... East Haven met NAACP's substantive demands with respect to its hiring practices," *NAACP II*, 44 F.Supp.2d at 431, that therefore "[t]he demand for attorney's fees was the sole unresolved issue when suit was brought," *id.* at 425, and that "the litigation [thus] hoped to achieve only a fee award," *id.* at 431. The record does not support those findings.

In Rones's November 30, 1992 and March 4, 1993 letters, she indicated that the NAACP's primary demand was an expanded, aggressive recruitment campaign including radio advertising directed to black residents of neighboring cities. She provided East Haven's outside counsel, Albis, with consent decrees from previous cases as examples of the kind of agreement the NAACP sought. Albis responded with an April 19 letter insisting that the Town had no resident hiring preference and that it was already recruiting applicants from outside of East Haven. Speaking for the Town, he said that it was not "appropriate" for the Town to enter into a consent decree similar to those that Rones had supplied. Albis then asked whether there were "*other* means whereby this matter can be settled" (emphasis added). Thus, despite expressions of a willingness to settle, Albis's April 19 letter provides no support for the district court's finding that the Town had met the NAACP's substantive demands. To the contrary, the April 19 letter states the Town's intention to "continue [its current] recruitment practices" and reflects no willingness to accede to the NAACP's primary demand of an expanded recruiting effort directed specifically to blacks.

East Haven continued to resist the NAACP's demands. Rones's May 4 letter to Albis listed four conditions for settlement: (1) "expansive [sic] recruitment on radio stations directed toward black listeners"; (2) "mak[ing] the agreement public"; (3) "allow[ing] the NAACP to go promptly to federal court, if after joint discussions, we decide the Town is not complying with the terms of the agreement"; and (4) reimbursing the NAACP for "expenses including attorneys fees." The letter also stated: "If these terms seem acceptable to your client, please let me know and we will draft an agreement incorporating the aforementioned terms."

Albis responded with his May 7 letter, set forth in full above. It flatly rejected Rones's insistence on the payment of the NAACP's attorney's fees. And it took no position on the remaining terms, stating that the Town "will advise ... on the remaining points" once the Town reviewed the proposal. We therefore cannot agree with the district court's characterization of this communication as "East Haven me[eting] NAACP's substantive demands with respect to its hiring practices," *NAACP II*,

44 F.Supp.2d at 431, or "East Haven acquiesc[ing] in an NAACP demand for a more extensive employment recruiting program reaching out to the black community," *id.* at 425, or the Town, through its lawyer, "inform[ing] NAACP Attorney Stephanie Rones that the town agreed to all of the items except attorney's fees which remained unresolved," *id.*

Albis's testimony also does not suggest that he and Rones entered into an agreement on behalf of their respective clients settling NAACP's substantive claims. Albis characterized the situation in early May 1993 as "moving closer to a settlement," not reaching one. Indeed, counsel for the defendants told us at oral argument that the defendants were "not claiming . . . that the Town had agreed" to the NAACP demands and conceded that he did not think "that factual finding [by the district court] is accurate." Audiotape of Oral Argument, February 22, 2001.

After the May exchanges, no further progress was made in the negotiations. The Town made no counteroffer. Neither did it subsequently "advise" the NAACP, as promised in Albis's May 7 letter, as to whether it accepted the NAACP's substantive demands.

The NAACP filed suit shortly thereafter, immediately prior to the expiration of its EEOC right-to-sue letter. The Town then aggressively defended the lawsuit without formally agreeing to any of the terms in the NAACP's May 4 letter or suggesting other terms for settlement. In light of these facts, we conclude that the district court's finding that the Town had

agreed to all of the NAACP's demands except for attorney's fees was clearly erroneous. The court's denial to the NAACP of attorney's fees for work performed in and after May 1993 (other than work on the fee application) based on that finding was therefore an abuse of discretion.[6]

The defendants urge us to adopt an alternative view of the district court's decision. Perhaps the district court, instead of finding that the Town had in fact agreed to all of the NAACP's terms, found only that the parties would have agreed on everything except attorney's fees if negotiations had continued. This would support the district court's finding that the NAACP brought suit solely for the purpose of obtaining those fees and that fees incurred during the course of that litigation should therefore not be reimbursed.

■ The defendants' reading of the district court's opinion is plausible. We conclude, however, that a denial of fees on this basis would also be an abuse of discretion because it would be contrary to our holding in *Ortiz v. Regan,* 980 F.2d 138, 140 (2d Cir.1992). As we read *Ortiz,* the parties' closeness to settlement in informal negotiations, or a defendant's subjective "willing[ness]" to reach an agreement, Appellees' Br. at 26, are, together or alone, insufficient grounds for declining to award attorney's fees incurred in subsequent litigation. "Absent a showing of bad faith, 'a party's declining settlement offers should [not] operate to reduce an otherwise appropriate fee award.'" *Ortiz,* 980 F.2d at 141 (quoting *Cowan v. Prudential Ins. Co.*

---

6. We neither express nor imply any opinion on whether the NAACP would have been able to recover attorney's fees incurred in litigation if the Town had actually agreed to all of the terms except attorney's fees. Resolution of that issue would depend in part on an analysis of the Supreme Court's recent decision in *Buckhannon Board and Care Home,* *Inc. v. West Virginia Department of Health and Human Resources,* 531 U.S. 1004, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), holding that a party that achieves its desired result without securing a judgment or a court-ordered consent decree is not a prevailing party entitled to recover attorney's fees.

*of Am.*, 728 F.Supp. 87, 92 (D.Conn.1990) (Winter, C.J., sitting by designation), *rev'd on other grounds*, 935 F.2d 522 (2d Cir. 1991)); *see also Raishevich v. Foster*, 247 F.3d 337, 347 (2d Cir.2001) (holding that a district court abused its discretion by denying fees to a party "on the basis of that party's rejection of the court's [informal oral] settlement proposal, which was also rejected by his adversary"). If a district court were allowed to "rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded ...., plaintiffs with meritorious claims [could] be improperly dissuaded from pressing forward with their litigation." *Ortiz*, 980 F.2d at 140–41.[7]

The defendants, focusing on the words "absen[ce] ... of bad faith" in *Ortiz*, argue that the district court's finding that "the litigation hoped to achieve only a fee award," *NAACP II*, 44 F.Supp.2d at 431, amounts to a finding of bad faith that justifies the district court's reliance on informal negotiations in deciding to reduce the fee award. The defendants suggest that this was the implicit holding of the district court, although the court neither used the term "bad faith" nor cited *Ortiz*.

We assume without deciding that filing suit solely to achieve a fee award constitutes bad faith. Even so, we have been pointed to, and ourselves find, nothing in the record on appeal to suggest bad faith on the part of the NAACP beyond its decision to file suit at a time when, in the district court's view, settlement of the NAACP's substantive demands was within reach. Any finding of bad faith by the district court must therefore have been based solely on the court's view of the progress of informal negotiations among the parties and their counsel.

█ We hold that informal negotiations alone cannot establish bad faith for purposes of *Ortiz*. Otherwise, in attempting to limit fee awards, defendants could argue that informal negotiations in the run up to litigation show that the litigation was unnecessary and therefore in bad faith. Permitting such an argument to prevail would be precisely contrary to the purpose of *Ortiz*: to prohibit the use of informal negotiations as a basis for reducing fee awards in order to avoid just this sort of hindsight scrutiny of a litigant's tactical decisions that would "improperly dissuade[ ]" "plaintiffs with meritorious claims ... from pressing forward with their litigation." *Ortiz*, 980 F.2d at 140–41.

Aside from our concern about the deterrence of meritorious suits, we think that as an evidentiary matter, it is unlikely that a finding of bad faith can be supported solely by evidence that the parties were close to settlement. Without some independent evidence of bad faith, a plaintiff's decision to file suit despite the closeness to settlement may well in most or all cases be a legitimate tactic to buttress its negotiating position.

█ We see nothing in the record on appeal to suggest otherwise with respect

---

**7.** The defendants argue that *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) undermines the vitality of *Ortiz*. But *Farrar* dealt only with an aspect of *Ortiz* not relevant here—whether an award of nominal damages is sufficient to support the provision of attorney's fees under 42 U.S.C. § 1988. *See Farrar*, 506 U.S. at 112–16, 113 S.Ct. 566 (holding that a plaintiff who wins only nominal damages is a prevailing party under § 1988 but that such a plaintiff should usually receive no fee). *Farrar* did not address *Ortiz*'s holding that informal negotiations should not be the basis for reduction or denial of fee awards absent a showing of "bad faith"—a holding that we recently reaffirmed in *Raishevich*, 247 F.3d at 347.

to the litigation before us. The NAACP was faced with an expiring right-to-sue letter and an absence of agreement on any of its substantive demands. The district court suggested that the Town's expressions of its willingness to settle short of litigation required the NAACP to let its right-to-sue letter expire while negotiations continued. *See NAACP II*, 44 F.Supp.2d at 430. But there is no legal principle of which we are aware that requires a party to continue to negotiate a settlement of a claim rather than bring suit because the outlook for settlement is promising. The NAACP's institution of formal legal proceedings here is particularly understandable inasmuch as refraining from doing so would have placed the NAACP at a tactical negotiating disadvantage because of its loss of the benefit of its expiring right-to-sue letter. In the face of the Town's failure to respond definitively to the NAACP's offer of settlement and the imminent expiration of its right-to-sue letter, the NAACP's decision to file suit was perfectly reasonable.

Giving "additional weight" to our holding in *Ortiz* was the availability of Federal Rule of Civil Procedure 68,[8] which "permits a party defending against a claim to make a settlement offer and thereby avoid any liability for costs, including attorney's fees, incurred after the making of the offer." *Ortiz*, 980 F.2d at 141. The Town made no such offer in this case. The district court concluded, however, that Rule 68 is inapplicable because no suit was pending at the time of the negotiations. *See NAACP II*, 44 F.Supp.2d at 430. But the unavailability of Rule 68 *before* suit does not explain why, if it was prepared to settle the case and wished to avoid liability for further attorney's fees, the Town did not take advantage of Rule 68 *after* the suit had been commenced. East Haven "could have made a formal offer of judgment pursuant to Rule 68 but chose not to use this procedure." *Ortiz*, 980 F.2d at 141.[9]

Because the Town never made any kind of offer—either before or after the lawsuit was commenced—and never responded definitively to the offer from the NAACP, we need not decide whether pre-suit settlement offers can ever preclude liability for attorney's fees incurred thereafter and, if so, the degree of formality required for such offers.[10] For purposes of this case, it

---

8. Federal Rule of Civil Procedure 68 provides in part:

 At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

9. The defendants argue that Rule 68 is unworkable in cases seeking complex, conduct-oriented remedies because of the practical difficulty of comparing the relief awarded and a pre-judgment offer. They cite no authority for their argument, and nothing in the Rule suggests that it applies only to cases seeking

damages or other relief amenable to simple comparisons. Indeed, the Seventh Circuit has noted that although "Rule 68 offers are much more common in money cases than in equity cases, ... nothing in the rule forbids its use in the latter type of case." *See Chathas v. Local 134 IBEW*, 233 F.3d 508, 511 (7th Cir.2000) (collecting cases). Whatever practical difficulties there may be in applying Rule 68 in cases involving complex relief, they do not hinder us in this case because the Town never made an offer of any kind. Moreover, those practical difficulties militate in favor of requiring more formality than the indefinite expressions of a willingness to settle upon which the defendants urge reliance in this case.

10. The Fourth Circuit has held that "[o]ffers of compromise made before suit is filed do not fall within [Rule 68]" and therefore "may

suffices to hold, as we now do, that *Ortiz's* prohibition against relying on "informal negotiations and hindsight to determine whether future litigation was warranted and, accordingly, whether attorney's fees should be awarded," *id.* at 140, applied to post-suit negotiations in *Ortiz,* applies to pre-suit negotiations as well.

In sum, we conclude that there was no Town offer on the table in May 1993 when the NAACP decided to institute this litigation. And the NAACP was not required to make that decision amidst ongoing negotiations based on a guess as to whether six years later a district court would find that the negotiations would have been fruitful had they continued. A plaintiff, concerned that a court will refuse its claim for legal fees after successful litigation because the court concludes that pre-litigation negotiations probably would have succeeded, will likely decide whether to bring suit based on that fear rather than its best judgment.

Finally, we note that even if the Town had agreed to the NAACP's substantive pre-suit demands by making a Rule 68 offer of judgment accepting them after suit was filed, denial of fees would nevertheless have been improper because the relief ultimately obtained by the NAACP was superior in several respects to the NAACP's pre-suit demands. First, the NAACP obtained a judicial decree, which the Town had explicitly rejected. Second, the NAACP obtained relief against the Board of Education, which was not involved in the pre-suit negotiations. Third, the decree requires reforms in the Town's testing and selection process, an issue that was not a subject of the negotiations.

Fourth, the decree requires the Town to implement a formal system for monitoring, enforcing, and keeping records of hiring and recruitment efforts. Thus, the Town's "agreement" to the NAACP's pre-suit demands would not justify the denial of fees in prosecuting this litigation, which achieved significantly more than would have been available through settlement had it been based on the demands with which the Town had "no problem." *See Coutin v. Young & Rubicam P.R.,* 124 F.3d 331, 341 (1st Cir.1997) ("[I]t is a mistake of law to reduce an award of attorneys' fees in a civil rights case in response to a plaintiff's rejection of a defendant's settlement offer when the subsequent judgment exceeds that offer.").

Insofar as the district court found that the Town had agreed in substance to the NAACP's pre-suit demands, then, the finding was clearly erroneous. Insofar as the court relied on informal negotiations to deny attorney's fees, that reliance was contrary to our holding in *Ortiz.* The NAACP was awarded virtually all of the relief it sought in its complaint, and in some respects more. It therefore obtained "excellent" results and "should recover a fully compensatory fee." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933.

## CONCLUSION

For the foregoing reasons, we vacate the district court's supplemental judgment and remand for an award of attorney's fees consistent with this opinion.

not 'relieve [a] defendant from the payment of the costs of the action.'" *Clark v. Sims,* 28 F.3d 420, 424 (4th Cir.1994) (quoting 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 3003 (1973)); *see also Cox v. Brookshire Grocery Co.,* 919

F.2d 354, 358 (5th Cir.1990) ("A defendant's offer of compromise before the commencement of an action is not an offer under Rule 68, and therefore [the defendant's] higher settlement offer does not preclude an award of fees to [the plaintiff's] attorneys.").