James F. ROGERS, III Plaintiff,

v.

**FIRST UNION NATIONAL BANK, Defendant.**

No. CIV.A.3:01 CV 8(CFD).

United States District Court, D. Connecticut.

April 16, 2003.

Carl R. Ajello, Ansonia, CT, Nathaniel Wesley Shipp, Norwalk, CT, Reine Boyer-Howard, Norwalk, CT, for Plaintiff.

Michael N. Lavelle, Pullman & Comley, Bridgeport, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

### I. *Introduction*

The plaintiff James F. Rogers ("Rogers") brought this action against his former employer, First Union National Bank ("First Union"), alleging that he was discriminated against in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (ADEA), and the Connecticut Fair Employment Practice Act, § 46a–60 *et seq.*[1] (CFEPA). Pending is the defendant's Motion for Summary Judgment [Doc. # 29]. For the following reasons, the Motion is GRANTED in part and DENIED in part.

### II *Background*[2]

Until 1998, Rogers was an Assistant Bank Manager at First Union. In 1998, when Rogers was 57 years old,[3] First Union began a substantial reorganization which it called "Future Bank Initiative" ("FBI"). Pursuant to the FBI reorganiza-tion, First Union eliminated certain positions and created new ones. Rogers' position was eliminated.

Pursuant to FBI, existing employees in terminated positions were invited to apply for one of the newly created positions. Rogers applied for two positions-Financial Specialist Sales Leader and Customer Relations Leader-and was ultimately rejected. He was, however, offered the position of Staffing Coordinator, but rejected it and was terminated on June 30, 1998.

On December 16, 1998 Rogers filed a complaint of discrimination with the Connecticut Commission of Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission ("EEOC"). He received a right to sue letter from the EEOC on October 16, 2000 and commenced this action in the Connecticut Superior Court on December 13, 2000. First Union removed the case to this Court based on federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441.

Rogers' Second Amended Complaint contains six counts. All six counts allege violations of both ADEA and CFEPA. Although the Second Amended Complaint is unclear at times, read liberally it appears to assert an action under ADEA pursuant to both the "disparate treatment" theory of liability, in that it asserts intentional discrimination, and the "disparate impact" theory of liability, in that it asserts that the defendant applied a "facially neutral" policy that had a discriminatory effect. The complaint also appears to assert both of these theories of liability under CFEPA.[4]

---

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441.

2. The following facts are taken from the parties' motion papers and Local Rule 9(c) statements and are undisputed unless otherwise noted.

3. Rogers was born on October 4, 1940.

4. It is clear that counts one, three, and five of the Second Amended Complaint assert violations of ADEA and CFEPA arising out of Rogers' not being hired for the Financial Sales Leader and Customer Relations Leader

First Union claims that the selection process for filling the new positions was developed with the aid of outside consultants and was based on a numerical average of four discrete components that it asserts were "objective criteria": the candidates' three most recent employment performance reviews, a telephone application, a "specially designed Target Selection interview," and "a video response assessment called AccuVision." Rogers, however, claims that the actual reason for his not being hired for either of the two positions was his age. First Union has moved for summary judgment on the basis that there are no genuine issues of material fact regarding whether it discriminated against Rogers.

### III. *Summary Judgment Standard*

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Miner*

*v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

■ Finally, the Second Circuit has declared that a "trial court must be especially cautious in deciding whether to grant [summary judgment] in a discrimination case, because the employer's intent is often

---

positions in March 1998 (with a final internal appeal in May 1998) and that counts two, four, and six allege violations of ADEA and CFEPA arising out of Rogers' not being selected for the Financial Sales Leader position in June of 1998. The nature of the specific claims in each of the individual counts is not clear, however. As far as the Court can discern, counts one and two assert a disparate impact claim, to the extent that they allege the defendant's "facially neutral" policy resulted in discrimination. Counts three and four appear to assert a disparate treatment claim because they makes reference to a "purposeful effort" by First Union to eliminate "older, more highly paid persons" in

favor of younger ones. Counts five and six are the most puzzling, as they do not appear to assert a cause of action not raised in counts one through four. They assert that First Union's alleged discrimination has deprived Rogers of his right to "make or enforce a contract on the basis of age" and has also deprived him of "equal rights and benefits enjoyed by younger persons" in violation of ADEA and CFEPA. As these counts seem to add nothing to counts one through four, the Court interprets the Second Amended Complaint as asserting two theories of recovery under each of the two statutes: disparate treatment and disparate impact.

at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999) (citing *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996) and *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994)). *See also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)("Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.") (citations and internal quotations marks omitted). Nevertheless, even when intent is at issue, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.*

IV. *Discussion*

A. *Counts Three and Four: Disparate Treatment*

■ As indicated above, the complaint asserts claims arising under both ADEA and CFEPA. In interpreting CFEPA, Connecticut courts look to the interpretation of federal discrimination laws for guidance and have applied the same burden-shifting analysis that the federal courts use in analyzing claims of intentional discrimination brought under federal law. *See Levy v. CHRO*, 35 Conn.App. 96, 107–08 (1994) (applying the burden-shifting framework developed by the United States

Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for cases of intentional discrimination under Title VII to a claim under Conn. Gen.Stat. § 46a–60). Thus, this Court will apply the same analysis to the disparate treatment claims brought pursuant to CFEPA as to those brought under ADEA.

The U.S. Supreme Court has developed a "burden shifting framework" for assessing claims of intentional discrimination brought pursuant to Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Second Circuit has subsequently applied the same burden-shifting framework articulated in *McDonnell Douglas* to disparate treatment claims arising under ADEA. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001) ("The framework for establishing a prima facie case of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), also applies to ADEA claims.") (citing *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000)).

■ Under the burden-shifting framework of *McDonnell Douglas*, as applied to an ADEA claim, a plaintiff alleging disparate treatment must first establish a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817.[5] The burden then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for its

5. The *McDonnell Douglas* burden-shifting framework is only necessary when the plaintiff has failed to offer direct evidence of discriminatory intent. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.") (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121,

105 S.Ct. 613, 83 L.Ed.2d 523 (1985)); *Johnson v. New York*, 49 F.3d 75, 78 (2d Cir. 1995)("The *McDonnell Douglas* framework, which guided the district court's analysis, is intended to assist the fact-finding process when the plaintiff is unable to present direct evidence of discrimination."). Here, the plaintiff has not offered any direct evidence of discriminatory intent; thus, the *McDonnell Douglas* inquiry is appropriate.

actions. *See James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir.2000). Finally, if the defendant does offer a non-discriminatory reason for its decision, the burden again shifts to the plaintiff to show that the defendant's stated reason is a mere pretext for discrimination. *See Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–10, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). In some circumstances, under *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105, (2000), after the plaintiff offers evidence to show that the defendant's asserted non-discriminatory reason for the hiring is pretextual, the evidence that established the prima facie case will be sufficient to survive a summary judgment motion. 530 U.S. at 148, 120 S.Ct. 2097 ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

■ To establish a prima facie case of discrimination, a plaintiff must show (1) membership in a protected class, (2) qualification for the employment, (3) an adverse employment decision, and (4) circumstances that give rise to an inference of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. *See also Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000). Courts have acknowledged this framework is "not inflexible," but that "in establishing a prima facie case the plaintiff must show that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances that give rise to an inference of discrimination." *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir.1998) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d

207 (1981)) (internal quotation marks omitted).

■ There is no question that Rogers has established a prima facie case, a point that First Union expressly concedes. Rogers is a member of the protected class: ADEA prohibits discrimination on the basis of age against those persons age 40 and over, and the parties agree that Rogers was 57 years old at the time of his termination. Rogers was also at least "minimally qualified" for the positions. The qualification prong in the prima facie case is not onerous. *See Gregory v. Daly,* 243 F.3d 687, 696 (2d Cir.2001) (holding that to meet the qualification prong of the prima facie case, the plaintiff "need only make the minimal showing that [he] *possesses the basic skills necessary for performance of the job.*") (emphasis in original). In addition, First Union has acknowledged that Rogers would not have been permitted to apply for the two positions if they had not determined that he met a threshold level of qualification. Additionally, the decision not to hire Rogers for his first two choices was an adverse employment decision. Finally, he was rejected under circumstances that give rise to an inference of discrimination since he was the oldest candidate and younger, less experienced candidates were given certain of the positions he sought.

■ With the establishment of the prima facie case, as noted above, the burden shifts to the defendant to offer a non-discriminatory reason for the firing. *See James,* 233 F.3d at 154. First Union offers such a rationale, claiming that its decision not to hire Rogers for either of the two positions was based not on his age, but by the score he received on the test designed specifically for the FBI reorganization by outside consultants. The scores on the FBI test were based on four discrete elements, each weighed equally: 1) an average of the candidate's three most recent

performance reviews, 2) a telephone application, which included an "experience questionnaire," 3) a "specially designed interview called Target Selection," and 4) "a video-response assessment called AccuVision." Def.'s Mem. in Supp. of Mot. for Summ. J., at 3. First Union asserts that all four of the factors were age-neutral, and that Rogers' relatively poor performance based on these criteria was the basis on which it made its decision not to hire him.

■ Under the *McDonnell Douglas* framework, as noted above, Rogers has the burden of putting forth evidence from which a reasonable juror could find that First Union's purported rationale was a mere pretext for age discrimination and, under *Reeves*, he may rely on the evidence that comprised his prima facie case to do so. Here, Rogers has set forth evidence from which a reasonable juror could conclude that the decision not to hire Rogers was based on his age. For example, Rogers notes that the AccuVision answer sheets asked for personal information, including the candidate's age. He also asserts that the AccuVision video "emphasized" youth through the use of young actors, that First Union sought a number of qualities closely associated with youth, including "trainability," and that while credit was given for experience, such credit was expressly capped at relatively low levels.

First Union responds, correctly, that it is permissible to rely on subjective factors (such as poor performance in an interview), see *Byrnie*, 243 F.3d at 104, and on objective factors that correlate with age, as long as age itself is not a factor. *See Bovers v. Flying Tiger Line, Inc.*, 979 F.2d 291, 298 (2d Cir.1992) ("While ADEA protects plaintiffs from being victimized by discrimination based on their age, it does not entitle them to protection against all negative employment decisions, when

these are made for reasons independent of their age."). However, whether the decision not to hire Rogers was made because of the factors offered by First Union or because of his age is a question for the finder of fact. Rogers has offered enough evidence that reasonable jurors could conclude that he was not selected for the new positions because of his age. In *Reeves*, the Supreme Court held that the plaintiff's rejection of the defendant's non-discriminatory rationale can permit the fact finder to infer discrimination based on the entire record:

> [I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Specifically, we stated: The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.

*Reeves*, 530 U.S. at 146–47, 120 S.Ct. 2097 (citations and internal quotation marks omitted).

Here, although a close call, a reasonable juror could possibly conclude from the evidence that First Union's proffered explanation is a mere pretext for intentional discrimination based on age. The fact finder could conclude that capping experience was not motivated by permissible, non-age factors, but to disadvantage candidates *because of* their age; that requesting the candidate's age on the AccuVision answer sheet indicated an impermissible reliance on age as a factor in hiring decisions; that "trainability" is simply a synonym for "youth;" and that the use of young actors in the AccuVision video suggests an imper-

missible bias against older candidates. It is not appropriate for the Court to make these ultimate determinations on a motion for summary judgment, based on a paper record, however. The *McDonnell Douglas* burden shifting framework sets forth burdens of production, not of persuasion; it does not involve credibility assessments. *Id.* at 142, 120 S.Ct. 2097. It is enough that, considering all evidence in the aggregate and in a light most favorable to the plaintiff, there is sufficient evidence to support an inference of discrimination to withstand summary judgment.

Thus, there are genuine issues of material fact as to the reason for First Union's decision not to hire Rogers for either of the two positions he sought and the Defendant's Motion for Summary Judgment is DENIED as to counts three and four of the Second Amended Complaint asserting disparate treatment in violation of ADEA and CFEPA.

## B. *Counts One and Two: Disparate Impact*

█ Unlike disparate treatment, in asserting a claim of disparate impact a plaintiff need not allege that the discrimination was intentional. *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–32, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) ("[G]ood intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built in head winds'"). It is enough that a facially-neutral policy, such as the FBI initiative testing at issue here, be shown to have an adverse impact on a protected group. Although developed by the Supreme Court in the context of a Title VII case, disparate treatment claims can also be brought under the ADEA. *See District Council 37, Am. Fed'n of State, County & Mun. Employees v. New York City Dep't of Parks and Recreation*, 113 F.3d 347, 351 (2d Cir.1997) ("[W]e [have] held that disparate impact claims can be made under the ADEA.") (citations omitted).

Disparate impact cases, like disparate treatment cases, are governed by a "burden-shifting" framework. The Second Circuit reviewed the disparate impact burden-shifting framework in *NAACP, Inc. v. Town of East Haven*, 70 F.3d 219, 225 (2d Cir.1995):

> "[A] plaintiff may establish a prima facie case of disparate impact by showing that use of the test causes the selection of applicants . . . in a racial pattern that significantly differs from that of the pool of applicants." *Bridgeport Guardians, Inc. v. City of Bridgeport*, 933 F.2d·1140, 1146 (2d Cir.1991), *cert. denied*, 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991). Such a showing can be established through the use of statistical evidence which discloses a disparity so great that it cannot reasonably be attributed to chance. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307–08, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). To establish a prima facie case, the statistical disparity must be sufficiently substantial to raise an inference of causation. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994–95, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). After a prima facie case is established, the employer has the burden of coming forward with evidence to show that the test has " 'a manifest relationship to the employment in question.' " *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)). If the employer can make such a showing, the plaintiff may nonetheless prevail if he can suggest alternative tests or selection methods that would meet the employer's legitimate needs while reducing the racially dispa-

rate impact of the employer's practices. *Bridgeport Guardians, Inc.*, 933 F.2d at 1147.

*Id.* at 225. *See also Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 160–61 (2d Cir.2001).

▮▮▮▮ To establish a prima facie case of disparate impact, a plaintiff must "(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Malave v. Potter*, No. 01–6263, slip op. at 1487 (2d Cir. Oct. 2, 2002) (quoting *Robinson*, 267 F.3d at 160) (internal quotation marks omitted). Rogers has identified a policy or practice-the FBI tests-but he has not met his burden regarding the other two elements of the prima facie case. With regard to those elements, "[s]tatistical data may be submitted 'to show a disparity in outcome between groups, but to make out a prima facie case, the statistical disparity must be sufficiently substantial to raise an inference of causation.'" *Id.* (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 364 (2d Cir.1999)). Rogers has not submitted any evidence demonstrating disparate outcomes between those over and under age 40.[6] Indeed, the only statistics offered were submitted by First Un-

ion, and a review of those statistics suggests that there was little, if any "disparity in outcome between groups." To the extent that there were disparities, they seem to have favored the protected group, rather than hindered it, and they were certainly not "so great that [they] cannot reasonably be attributed to chance." *NAACP*, 70 F.3d at 225.

For both positions Rogers sought, First Union divided its territory into northern and southern "clusters." Candidates for each of the positions were asked to select a "cluster," and Rogers selected the southern cluster.[7] There were 27 candidates in the southern cluster competing for the Customer Relations Leader position. Fourteen candidates were over age 40 and 13 were under age 40. *See* Def.'s Ex. In Supp. of Mot. for Summ. J. [Doc. # 33], Ex. D. Both of the successful candidates were under age 40. However, in the northern cluster, where there were 7 candidates under age 40 and 11 over age 40, both of the successful candidates were over age 40, using the same criteria for selection as the southern cluster. *See id.* Thus, overall, 25 out of 45 candidates were in the protected class and two of the four positions were secured by members of the

---

6. In order to sustain a disparate impact claim under ADEA, a plaintiff must allege a disparate impact on the entire protected group, i.e., those over age 40. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 111 fn. 6 (2d Cir.2001); *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir.1997); *Foley v. City of Danbury*, No. CIV–A300CV712, 2001 WL 263302, at *7 (March 9, 2001 D.Conn.). Thus, the relevant inquiry for purposes of the ADEA claim is whether the selection criteria resulted in a significantly lower ratio of successful candidates over age 40 than the ratio of individuals over age 40 in the entire candidate population.

7. The rough statistical analysis that follows is based on the Court's reading of data submitted by First Union which contains the ages of

each of the candidates for the contested positions. Neither of the parties attempted to compile this data, as the Court has, to show that there was or was not a disparity between the age composition of the applicant pool and the successful candidates.

The Second Circuit has held that, in some circumstances, a statistical analysis comparing the percentage of successful candidates from the protected class to a population other than the applicant pool may be relevant, such as when "the preferred statistics are 'difficult' or 'impossible' to obtain." *See Malave,* slip op. at 1489 (citations omitted). Here, however, it appears that data on the relevant labor pool was readily available. Also, Rogers has not suggested using an alternative population for the disparate impact analysis.

protected class-i.e., the protected group comprised slightly over half of the applicant pool and secured half the positions.

As to the Financial Sales Leader applicants, of the eight positions for both clusters, seven were filled by candidates over the age of 40 (and in the southern cluster, all the Financial Sales Leaders selected were over age 40). Of 33 candidates competing for the Financial Sales Leader Position in the two clusters, 20 were over age 40. Thus, it appears that members of the protected group were selected for the Financial Sales Leader Position in a ratio that exceeded their percentage of the applicant pool. *See id.* Looking at both clusters and both job positions-which were both subject to the same FBI criteria-the protected group comprised 56.4% of the applicants while making up 75% of the successful candidates.

Finally, the statistics do not support an inference of disparate treatment regarding the Financial Sales Leader position that Rogers sought when it was vacated in May of 1998. The successful applicant in that case was 51 years old-one of the oldest candidates in the field of 12 applicants, which included 4 people under age 40.

Thus, as the evidence in the record does not support an inference that the FBI selection criteria had a disparate impact on the class of persons over 40, the defendant's motion for summary judgment is GRANTED as to the plaintiff's claims to the extent that they allege a "disparate impact" theory of recovery under ADEA.

Unlike ADEA, CFEPA does not have an age "floor" which the Court can use to identify which applicants are members of a protected class in order to conduct a statistical analysis to determine if the "facially neutral" policies are having a disproportionate effect on members of the group protected by the statute. *See Byrnie,* 243 F.3d at 111 fn.6. The Connecticut Supreme

Court has not addressed this issue, nor has any Connecticut court considered a disparate impact age claim under CFEPA in any published opinion. However, even in the absence of such guidance, it is this Court's obligation to decide this question as the Connecticut Supreme Court would decide it. "Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." *Fieger v. Pitney Bowes Credit Corp.,* 251 F.3d 386, 399 (2d Cir.2001) (quoting *Michalski v. Home Depot, Inc.,* 225 F.3d 113, 116 (2d Cir.2000)) (internal quotation marks omitted).

It is likely that the Connecticut Supreme Court would hold that disparate impact claims of age discrimination are cognizable under CFEPA, and would define the protected group for purposes of statistical analysis by imposing an age "floor," such that all persons over the designated age would constitute the protected class. As to the specific age the Connecticut Supreme Court would select, it appears that the Supreme Court would use the same age floor used in ADEA-age 40. Such an approach would be consistent with Connecticut courts' decisions which look to the interpretation of the federal discrimination statutes for guidance in interpreting Connecticut discrimination statutes. *See Levy,* 35 Conn.App. 96, 107–08 (1994). Moreover, since the CFEPA is silent on this point, there is no obvious basis for choosing an age cut-off other than by reference to analogous federal law. Also, Rogers has not argued that another age floor should be used in conducting a disparate impact analysis. Thus, the Court applies the same disparate impact analysis under CFEPA that it applied under ADEA and finds that Rogers has failed to establish a prima facie case of disparate impact on the same basis. Therefore,

First Union's Motion for Summary Judgment is GRANTED as to counts one and two of the Second Amended Complaint alleging disparate impact in violation of ADEA and CFEPA.

### C. *Counts Five and Six*

As noted above, *see* fn. 4, *supra,* counts five and six of the Second Amended Complaint do not assert any additional causes of action not raised in counts one through four. Read liberally, they might assert either the disparate treatment or disparate impact theories of recovery (or perhaps both) under ADEA and CFEPA, but they cannot be read to assert any other basis of recovery not raised in the other counts. Therefore, First Union's Motion for Summary Judgment is GRANTED as to counts five and six of the Second Amended Complaint.

### V. *Conclusion*

For the preceding reasons, the defendant's Motion for Summary Judgment [Doc. # 29] is GRANTED as to counts one, two, five and six of the Second Amended Complaint and DENIED as to counts three and four.