**Joan ZAWACKI, Plaintiff,**

**v.**

**REALOGY CORPORATION, Defendant.**

**No. 3:09CV00056 (DJS).**

United States District Court, D. Connecticut.

June 23, 2009.

---

Daniel P. Hunsberger, Sr., Law Offices of Elisabeth Seieroe Maurer, PC, Elisabeth Ann Seieroe Maurer, Maurer & Associates, Ridgefield, CT, for Plaintiff.

Sally Downes Welch, William Joseph Anthony, Jackson Lewis, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Joan Zawacki ("the Plaintiff"), brings this action [1] against the defendant, Realogy Corporation ("the Defendant") alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and Connecticut Fair Employment Practices Act, Conn. Gen.Stat. §§ 46a–60 *et seq.* ("CFEPA"). The Defendant now moves to dismiss some of the Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that hereafter follow, the Defendant's motion to dismiss (**dkt. # 34**) is **GRANTED**.

## I. MOTION TO DISMISS STANDARD

 A Rule 12(b)(6) motion to dismiss seeks dismissal for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). When considering a

1. The Plaintiff filed this case in the Connecticut Superior Court for the Judicial District of Danbury at Danbury. The Defendant thereafter removed the case to federal court.

Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

## II. FACTS

The following facts are alleged in the second amended complaint. The Plaintiff was at all relevant times an employee of a subsidiary of the Defendant.[2] She began her almost thirty-two year career with the organization as a billing clerk, and ultimately worked her way to become the Vice President of Business Process and Workforce Management.

In her second amended complaint, the Plaintiff maintains that she was often at the forefront of designing and implementing innovative strategic directions for her organization. In addition, over many years, the Plaintiff received "meeting or exceeding expectations" ratings in her performance reviews. After her promotion to VP, her organization grew from approximately 20 people in 2001 to over 200 people in 2007.

From 2006 through 2007, the Plaintiff's organization executed three reduction in force initiatives (RIFs). The first occurred in May 2006; the second in December 2006; and the third in November 2007. According to the Plaintiff, the downturn in real estate-related revenue, the erosion of client fees, and overspending on IT system upgrades were the catalysts for these RIFs.

The Plaintiff claims that, for each of these RIFs, older workers were the targets. The organization apparently wanted to cultivate "up and comers" (i.e., younger employees) and remove "hangers on" and "dead wood" (i.e., older employees). The Plaintiff asserts that, starting in May 2006, people in senior management (such as the Plaintiff) were directed to look for any older employees who could be persuaded to retire, approach these individuals "as a friend," and suggest that they ask the HR department if there were going to be any special retirement packages. The Plaintiff then provides examples of how older employees were let go during the RIFs, but younger employees were allowed to stay. In addition, certain older employees were excluded from the RIFs because they were too "risky from a legal perspective." Nonetheless, according the Plaintiff, her organization's strategy was to demote these individuals with the hope that they

---

**2.** The Plaintiff represents that initially she was hired by a predecessor company of the Cartus Corporation, the subsidiary for which the Plaintiff worked. For the purposes of this discussion, the Court sees no need to distinguish between the subsidiary and the Defendant.

would leave. The Plaintiff herself was a target of the November 2007 RIF. Her employment with the defendant terminated on November 2, 2007.

## III. DISCUSSION

The Defendant now moves to dismiss: (1) any claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); (2) any disparate impact age discrimination claim; and (3) all retaliation claims under the ADEA and CFEPA. The Plaintiff opposes the motion to dismiss, arguing that these claims do not fail as a matter of law. The Court shall discuss the parties' arguments seriatim.

## A. TITLE VII

The Defendant moves to dismiss any claim brought pursuant to Title VII. Insofar as this request is necessary, the motion is granted. The Court points out that, although the introduction to the second amended complaint states that this action is brought pursuant to the ADEA, Title VII, and CFEPA (*see* dkt. # 33 ¶ 1), not one of the counts contained in the second amended complaint contains Title VII allegations, (*see id.* ¶¶ 41–65). Indeed, the second amended complaint contains only the following claims: (1) disparate treatment and disparate impact under the ADEA (First Cause of Action); (2) disparate treatment and disparate impact under CFEPA (Second Cause of Action); (3) retaliation under the ADEA (Third Cause of Action); and (4) retaliation under CFEPA (Fourth Cause of Action). Moreover, the second amended complaint does not appear to contain any factual allegation that

would support a Title VII claim, i.e., discrimination based on the Plaintiff's race, color, national origin, sex, or religion. Thus, as the Court reads the second amended complaint, there is no pending Title VII claim in this action.

■ In addition, it is clear that the Plaintiff did not file a charge with the Equal Employment Opportunity Commission ("EEOC") or Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging Title VII violations. The Plaintiff's administrative charges addressed only age discrimination under the ADEA and CFEPA. The Plaintiff did not state that her race, color, sex, national origin, or religion played a part in her termination, nor did she indicate that her charges were brought pursuant to Title VII. It is undisputed that an individual wishing to challenge an employment practice under Title VII must first file a charge with the EEOC. 42 U.S.C. § 2000e–5(e)(1). The Plaintiff did not do so. Thus, even if the second amended complaint contained Title VII claims (which it does not), these claims must be dismissed. Therefore, to the extent necessary, the Defendant's motion to dismiss the Plaintiff's Title VII claims is granted.

## B. ADEA/CFEPA DISPARATE IMPACT

■ In addition, the Defendant moves to dismiss any age discrimination claim brought under the so-called disparate impact theory. ADEA claims may be based on allegations of both disparate treatment and disparate impact.[3] *See Smith v. City*

---

**3.** It appears that there is no controlling Connecticut case law with regard to whether CFEPA allows disparate impact age discrimination claims. In addition, CFEPA, unlike the ADEA, does not impose an age "floor," i.e., designate an age whereby all persons over the that age are members of the class of

people protected by CFEPA. There is a opinion from this District, however, in which the Honorable Christopher F. Droney decided these issues of first impression by predicting how the Connecticut Supreme Court would decide them. *Rogers v. First Union Nat. Bank*, 259 F.Supp.2d 200, 209 (D.Conn.2003).

*of Jackson, Miss.,* 544 U.S. 228, 240, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). "In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Thus, if an employee's age played a role in her employer's decision-making process and influenced the outcome, the proper claim is disparate treatment. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

▉▉▉▉ "[C]laims that stress 'disparate impact' [by contrast] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co.,* 507 U.S. at 609, 113 S.Ct. 1701 (internal quotation marks omitted). For ADEA disparate impact claims, "the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Smith,* 544 U.S. at 241, 125 S.Ct. 1536 (internal quotation marks omitted) (emphasis in original). "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Id.*

▉▉▉▉ The Defendant maintains that the Plaintiff's disparate impact allegations must be dismissed because they were not raised before the EEOC or CHRO. The Plaintiff did not address this argument in her opposition memorandum. There is no dispute that, to maintain an action under the ADEA and CFEPA, a plaintiff must timely file administrative charges and receive jurisdictional releases from the administrative agencies. *See* 29 U.S.C. § 626(d); Conn. Gen.Stat. §§ 46a–82, 46a–100, 46a–101. According to the Defendant, because the Plaintiff did not expressly allege disparate impact in the administrative charges, the releases of jurisdiction did not include those claims, which, as a result, are not before the Court.

The Court notes that, on the Plaintiff's administrative charge form, there was no "disparate impact" box for the Plaintiff to check. The form is more general, asking for: (1) the adverse action taken by the employer; (2) the claimant's belief as to what wrongful consideration the employer took into account (e.g., age); and (3) the claimant's belief as to what particular laws the employer violated. Thus, the form itself is not helpful in determining this issue.

▉▉▉▉ Next, the Court must look to the Plaintiff's affidavit submitted in support of her administrative charges. As the Second Circuit has noted, "precise pleading is not required for ... exhaustion purposes, and even in the absence of an express linkage between [different forms of discrimination], the specific facts alleged by a plaintiff in his or her EEOC complaint

---

Because the Connecticut Supreme Court looks to federal precedent when interpreting and enforcing CFEPA, *see Levy v. Comm'n of Human Rights and Opportunities,* 236 Conn. 96, 103, 671 A.2d 349 (1996), Judge Droney held that "the [Connecticut] Supreme Court would use the same age floor used in ADEA-age 40." *Rogers,* 259 F.Supp.2d at 209. Judge Droney also held that "[i]t is likely that the Connecticut Supreme Court would hold

... disparate impact claims of age discrimination [to be] cognizable under CFEPA." *Id.* As a result, he found that the ADEA's disparate impact analysis applied to CFEPA. *Id.* The undersigned agrees with Judge Droney, and finds that: (1) CFEPA allows disparate impact age discrimination claims; and (2) the analysis for ADEA disparate impact age discrimination claims applies to CFEPA disparate impact age discrimination claims.

may suggest both forms of discrimination, so that the agency receives adequate notice to investigate discrimination on both bases." *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir.2003) (internal citation omitted). Thus, the Court must look to the facts alleged in the administrative charges to see if the EEOC and CHRO had adequate notice of the Plaintiff's disparate impact claims.

■ In the Court's view, the Plaintiff's affidavit fails in this regard. A disparate impact claim requires the Plaintiff to allege that the Defendant implemented some neutral policy that had a disparate effect on older employees. Her affidavit does not do this. As a result, the Court finds that the Plaintiff's disparate impact claims were not before the administrative agencies, and thus cannot be brought in her lawsuit here.

In addition, even assuming that the Plaintiff had brought disparate impact claims in her administrative charges, the Court believes that, based on the factual allegations in the second amended complaint, the disparate impact claims could not survive a motion to dismiss. There is no doubt that the Plaintiff is permitted to proceed under alternative theories of liability. Nonetheless, the Plaintiff's allegations must be sufficient to support both theories.

■ The Plaintiff's second amended complaint, which incorporates her administrative charges, states that the Defendant implemented three RIFs that were specifically and intentionally targeted at older employees. That is to say, the Plaintiff alleges that the Defendant's procedures in conducting the RIFs were nothing more than a cover for behind-the-scenes, intentional discrimination against its older employees. There is no allegation of a facially neutral practice or policy that fell more harshly on the protected group. *See Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992).[4] Absent any such allegation, the second amended complaint contains claims of only disparate treatment, regardless of how the Plaintiff labels her claims. The allegations in the second amended complaint simply do not support her claims of disparate impact. *See Kourofsky v. Genencor Intern., Inc.*, 459 F.Supp.2d 206, 214–15 (W.D.N.Y.2006); *Khalil v. Farash Corp.*, 452 F.Supp.2d 203, 209 (W.D.N.Y. 2006); *Wado v. Xerox Corp.*, 991 F.Supp. 174, 186 (W.D.N.Y.1998), *aff'd sub nom., Smith v. Xerox Corp.*, 196 F.3d 358 (2d Cir.1999). Thus, even if the Plaintiff's disparate impact claims were properly before the administrative agencies, the motion to dismiss those claims must still be granted.

## C. ADEA/CFEPA RETALIATION

The ADEA and CFEPA prohibit retaliation against employees who exercise rights protected by those statutes. *See* 29 U.S.C. § 623(d); Conn. Gen.Stat. § 46a–60(a)(4). Nevertheless, as discussed above, neither the ADEA nor CFEPA provides an unconditional private right of action for plain-

---

4. In *Maresco*, the facially neutral employment practice invoked by the plaintiff to support his disparate impact claim "coalesce[d] with his discharge which he claim[ed] to have constituted disparate treatment." *Maresco*, 964 F.2d at 115. The Second Circuit held that "allowing the disparate impact doctrine to be invoked as [the plaintiff] proposes would simply provide a means to circumvent the subjective intent requirement in any disparate treatment case." *Id.* This is similar to the situation here, where the employment practices supporting the Plaintiff's disparate impact claims are the employment practices supporting the disparate treatment claims. Based on the Court's understanding of the decision in *Maresco*, this is not permissible because it provides a means for the Plaintiff to avoid establishing the subjective intent requirement for her disparate treatment claims.

tiffs, who must exhaust their administrative remedies. The Defendant moves to dismiss the Plaintiff's retaliation claims, arguing that these claims were not raised before the EEOC or CHRO.

The Plaintiff admits that her administrative charges did not specifically mention retaliation. She maintains, though, that she was not required to do so in order to raise the issue of retaliation. The Plaintiff first argues that "where termination of employment is the act of retaliation alleged, a complainant need not also check a separate box alleging retaliation, since termination is a form (perhaps the ultimate form) of retaliation." (Dkt. # 37, p. 12.) This statement is, at least, partially incorrect. The termination of an employee's employment could very well constitute wrongful retaliation. Or, it could constitute wrongful discrimination. Or, it could constitute both wrongful retaliation and discrimination at the same time. It is not, however, necessarily both (or either) because the standards for establishing retaliation claims and discrimination claims are different.

▪ To constitute wrongful retaliation, a termination must, *inter alia,* have a causal connection to a plaintiff's participation in a protected activity (i.e., the exercising of rights protected by the relevant statute, here the ADEA and CFEPA). *See Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199, 205–06 (2d Cir.2006). For example, if a plaintiff were to provide testimony in support of a co-worker's ADEA or CFEPA age discrimination claim and the employer terminated the plaintiff because of that testimony, then the termination could be sufficient to support an ADEA retaliation claim even though the plaintiff herself was not subject to age discrimination. On the other hand, to constitute wrongful discrimination, a termination must, *inter alia,* be motivated, at least in part, by a plaintiff's membership in a protected class. Indeed, "[t]o establish a disparate-treatment claim under the plain language of the ADEA, ... a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Financial Servs., Inc.,* —— U.S. ——, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009). For example, if an employer terminated an employee because of the employee's age, and if the employee is over the age of forty, then the termination could be sufficient to support an ADEA or CFEPA discrimination claim.

The Court uses the above examples to demonstrate that it cannot necessarily or automatically assume that because the Plaintiff alleges her termination was discriminatory, she also alleges her termination was retaliatory. A plaintiff certainly can allege both; however, the Plaintiff is incorrect when she states that, in the administrative charges, a terminated complainant who checked the box alleging age discrimination need not also check the separate box alleging retaliation. The standards for the two claims differ, and the administrative charge forms specifically ask plaintiffs whether they are alleging discrimination or retaliation.[5]

---

5. The Court also disagrees with the Plaintiff's argument that "by checking the box in the Affidavit that alleges that the Defendant violated the [ADEA] ..., she *de facto* included in her claim a claim of ... retaliation." (Dkt. # 37, p. 12.) The Plaintiff is essentially saying that any claimant, by simply checking the ADEA box in the administrative form (which cites to 29 U.S.C. §§ 621–634), is alleging discrimination and retaliation because the ADEA, by its language, covers both. The Court finds this argument to be without merit. The ADEA prohibits age discrimination by employers (29 U.S.C. § 623(a)), employment agencies (29 U.S.C. § 623(b)), and labor organizations (29 U.S.C. § 623(c)); it also prohibits retaliation by those entities (29 U.S.C. § 623(d)), and the printing or publication of

The Court's analysis of the administrative charges does not end here. The Court should look not only at the administrative charge form, but also at the Plaintiff's attached affidavit, to see if it contains retaliation allegations. If it does, then the Court could consider the Plaintiff's retaliation claims to have been properly before the administrative agencies.

■ Upon review of the affidavit, though, there is no factual allegation that could support a retaliation claim. In the affidavit, the Plaintiff did not allege that she opposed any discriminatory practices by the Defendant. (*See* dkt. # 34–3 ¶¶ 9–11.) She maintained that the Defendant: (1) targeted older workers for the RIFs (*id.* ¶ 10); asked senior management to persuade older workers to retire (*id.*); and held several meetings whose "theme" was to protect "up and comers" (i.e., younger employees) and "weed out" the less desirables (i.e., older employees) (*id.* ¶ 11). There is no mention of the Plaintiff participating in a protected activity, which is a *sine qua non* of an ADEA retaliation claim. Consequently, the Court finds that the Plaintiff did not formally allege her retaliation claims before the administrative agencies.

■ The Court thus turns to the exceptions to the exhaustion requirement that apply in the Second Circuit. "Exhaustion is ordinarily 'an essential element' of a[n] [employment discrimination] claim." *Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir.2006) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.

2001)). "Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Id.* (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Svc. Care*, 163 F.3d 684, 693 (2d Cir.1998)); *see Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir.2003) (extending Butts' "reasonably related" rule to ADEA claims); *Garris v. Dep't of Corr.*, 170 F.Supp.2d 182, 188–89 (D.Conn.2001) (applying the "reasonably related" analysis to CFEPA claims). There are three types of claims that courts will find are "reasonably related" to the one's asserted in an administrative filing: (1) claims where the conduct complained of would fall within the scope of the administrative investigation; (2) claims alleging retaliation by an employer against an employee for filing an administrative charge; and (3) claims where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the administrative charge. *Butts*, 990 F.2d at 1402–03.

With regard to the first exception, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Williams*, 458 F.3d at 70 (internal quotation marks omitted). "In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff

notices or advertisements by those entities indicating preferences, limitation, specification, or discrimination based on age (29 U.S.C. § 623(e)). Taking the Plaintiff's argument to its next logical step, courts and administrative agencies would have to assume that a claimant, by merely checking the ADEA

box, is alleging every type of claim available under the ADEA. It is plain, however, that this is not the case. Claimants are required to be sufficiently specific in their administrative charges so that the administrative agency and the respondent are put on notice as to what the claims are.

is grieving." *Id.* (internal quotation marks omitted). "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." *Id.* (internal quotation marks omitted). This first exception "is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering." *Id.* (internal quotation marks omitted).

The Court finds that this first exception to the exhaustion requirement does not apply here. To begin with, this exception "is essentially an allowance of loose pleading" upon the recognition that employees frequently file administrative charges without the benefit of counsel. This, however, was not the situation here because the Plaintiff did have the benefit of counsel when she filed her administrative charges. As a result, the Court sees no reason to provide to the Plaintiff the "loose pleading" leniency that extends to *pro se* claimants or litigants. Moreover, as the Court discussed above, the Plaintiff's administrative charges did not give the agencies adequate notice to investigate both ADEA/CFEPA discrimination and ADEA/CFEPA retaliation claims. Quite simply, there is no indication in the administrative charges that the Plaintiff did anything (i.e., engaged in a protected activity) that caused the Defendant to retaliate. The Plaintiff alleged only that the Defendant targeted her and other older employees because of their age. Consequently, the first exception to the exhaustion requirement does not save the Plaintiff's retaliation claim.

The second exception to the exhaustion requirement applies to claims alleging retaliation by an employer against an employee for filing an administrative charge. This exception, while directed specifically at retaliation claims, clearly does not apply here. This exception applies in situations where an employer retaliates against an employee because the employee filed an administrative charge. Thus, courts (including the undersigned) have allowed retaliation claims not alleged in the administrative charge to proceed in situations where the retaliation occurred after the filing of the administrative charge or lawsuit. *See, e.g., O'Hazo v. Bristol–Burlington Health Dist.,* 599 F.Supp.2d 242, 254 (D.Conn.2009). In essence, it would be inequitable in those situations to require a plaintiff to file new administrative charges for retaliation claims when they arose out of, and are part and parcel of, the other claims contained in the administrative charges or lawsuit.

Such is not the situation here. The alleged act of retaliation—the Plaintiff's termination—could not have been caused by the Plaintiff's filing of administrative charges because the termination occurred before she filed those charges. Indeed, the termination is the basis of her administrative charges, and she was free to state in her administrative charges that it constituted discrimination and retaliation. She did not do so. The second exception to the exhaustion requirement has no applicability to this case.

This leaves the third exception to the exhaustion requirement, whereby a plaintiff may allege further incidents of discrimination carried out in precisely the same manner alleged in the administrative charge. As with the second exception, this exception clearly does not apply here. The alleged retaliatory act, the Plaintiff's termination, was not a "further incident" of discrimination. It was the exact incident alleged in the administrative charge. Indeed, there could not be any "further

incidents" of discrimination in this case because the central incident in the Plaintiff's administrative charges (her termination) ended the employment relationship between the Plaintiff and the Defendant. There were no chances for any such "further incidents." The third exception to the exhaustion requirement does not apply to this case. As a result, the Court cannot excuse the Plaintiff's failure to exhaust her administrative remedies. Consequently, the Court is precluded from hearing those claims, which must be dismissed.

■ Finally, the Court points out that, even if it could consider the Plaintiff's retaliation claims, she has failed to state a claim upon which relief can be granted. In her opposition memorandum, the Plaintiff alleges that the Defendant retaliated against her because she "refused to fully implement [the Defendant's] unlawful program and warned the Defendant about the unlawfulness of this program...." (Dkt. # 37, p. 4.) To determine what the Plaintiff's claims are, however, one must look to the operative complaint, not a legal memorandum.

The portion of the second amended complaint to which the Plaintiff cites in her memorandum does not support her argument here. The second amended complaint does no allege that she refused to implement the Defendant's programs, nor is there an allegation that she warned the Defendant about anything. The paragraph to which the Plaintiff cites reads as follows:

The next major Reduction In Force occurred in November, 2007. Plaintiff initially was asked ... to come up with further reductions in her areas including encouraging Roger Curless to retire. Roger Curless declined and Plaintiff refused to push him. Plaintiff was then cut out of any further discussions on this RIF.... Plaintiff was not included in the final decisions for any of the November, 2007 reduction in force action.

(Dkt. # 33 ¶ 35.)

This paragraph does not support the Plaintiff's allegation that she refused to implement the Defendant's programs. There is no allegation in the second amended complaint that the Plaintiff protested the Defendant's actions or warned the Defendant that its actions were unlawful. In fact, it seems that the Plaintiff was perfectly willing to go along with the Defendant's programs, as she herself apparently encouraged older employees to retire. The only "refusal" mentioned was the Plaintiff's declining to "push" Roger Curless to retire. There is no allegation, though, that the Defendant demanded that the Plaintiff "push" Mr. Curless to retire, but the Plaintiff refused. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* With regard to the Plaintiff's retaliation claims, the Court does not believe that the second amended complaint meets this standard. Therefore, even if the retaliation claims were properly before the Court (which, because of the Plaintiff's failure to exhaust her administrative remedies, they are not), they must be dismissed. Consequently, the Defendant's motion to dismiss the Plaintiff's retaliation claims is granted.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss (**dkt. # 34**) is **GRANTED.**

The Court hereby DISMISSES the following: (1) any of the Plaintiff's claims under Title VII; (2) the Plaintiff's disparate impact age discrimination claims under the ADEA (Count One) and CFEPA (Count Two); and (3) the Plaintiff's retaliation claims under the ADEA (Count Three) and CFEPA (Count Four).

*Thus, the remaining claims in this case are the Plaintiff's disparate treatment age discrimination claims under the ADEA (Count One) and CFEPA (Count Two).*